**MERRITT–CHAPMAN & SCOTT CORPORATION, Plaintiff,**

**v.**

**Louis WOLFSON et al., Defendants.**

**Marshal STAUB, Plaintiff,**

**v.**

**MERRITT–CHAPMAN & SCOTT CORPORATION, a corporation of the State of Delaware, Defendant.**

Superior Court of Delaware, New Castle.

May 31, 1974.

Richard F. Corroon and Michael D. Goldman, of Potter, Anderson & Corroon, Wilmington, for Merritt-Chapman & Scott Corp.

H. Albert Young, Bruce M. Stargatt, Edward B. Maxwell and Jack B. Jacobs, of Young, Conaway, Stargatt & Taylor, Wilmington, for Louis Wolfson, Elkin Gerbert, and Joseph Kosow.

Louis J. Finger and Richard F. Balotti of Richards, Layton & Finger, Wilmington, for Marshal Staub.

BALICK, Judge.

These actions arise over claims of Louis Wolfson, Elkin Gerbert, Joseph Kosow and Marshal Staub (claimants) for indemnification by Merritt-Chapman & Scott Corporation (MCS) against expenses incurred in a criminal action. All parties seek summary judgment.

Claimants were charged by indictment with participation in a plan to cause MCS to secretly purchase hundreds of thousands of shares of its own common stock. Count one charged all claimants with conspiracy to violate federal securities laws. Count two charged Wolfson and count three charged Gerbert with perjury before the Securities and Exchange Commission (SEC). Counts four and five charged Wolfson, Gerbert, and Staub with filing false annual reports for 1962 and 1963 respectively with the SEC and New York Stock Exchange.

At the first trial the court dismissed part of the conspiracy count but the jury returned guilty verdicts on all charges against all claimants. At that stage this court held that Wolfson, Gerbert, and Kosow were not entitled to partial indemnification. Merritt-Chapman & Scott v. Wolfson, 264 A.2d 358 (Del.Super.1970). Thereafter the convictions were reversed. United States v. Wolfson, 437 F.2d 862 (2nd Cir. 1970).

There were two retrials of the perjury and filing false annual report charges against Wolfson and Gerbert. At the first retrial the court entered a judgment of acquittal on count four at the end of the State's case, and the jury could not agree on the other counts. At the second retrial the jury returned a guilty verdict on count three, but could not agree further.

The charges were then settled as follows: Wolfson entered a plea of *nolo contendere* to count five and the other charges against him were dropped. He was fined $10,000 and given a suspended sentence of eighteen months. Gerbert agreed not to appeal his conviction of count three, on which he was fined $2,000 and given a suspended sentence of eighteen months, and the other charges against him were dropped. The prosecution also dropped the charges against Kosow and Staub.

Indemnification of corporate agents involved in litigation is the subject of legislation in Delaware. Title 8 Delaware Code § 145. Subsection (a), which permits indemnification, and subsection (c), which requires indemnification, provide as follows:

(a) A corporation may indemnify any person who was or is a party or is threatened to be made a party to any threatened, pending or completed action, suit or proceeding, whether civil, criminal, administrative or investigative (other than an action by or in the right of the corporation) by reason of the fact that he is or was a director, officer, employee or agent of the corporation, or is or was serving at the request of the corporation as a director, officer, employee or agent of another corporation, partnership, joint venture, trust or other enterprise, against expenses (including attorneys' fees), judgments, fines and amounts paid in settlement actually and reasonably incurred by him in connection with such action, suit or proceeding if he acted in good faith and in a manner he reasonably believed to be in or not op-

posed to the best interests of the corporation, and, with respect to any criminal action or proceeding, had no reasonable cause to believe his conduct was unlawful. The termination of any action, suit or proceeding by judgment, order, settlement, conviction, or upon a plea of *nolo contendere* or its equivalent, shall not, of itself, create a presumption that the person did not act in good faith and in a manner which he reasonably believed to be in or not opposed to the best interests of the corporation, and, with respect to any criminal action or proceeding, had reasonable cause to believe that his conduct was unlawful.

\*　　\*　　\*　　\*　　\*　　\*

(c) To the extent that a director, officer, employee or agent of a corporation has been successful on the merits or otherwise in defense of any action, suit or proceeding referred to in [subsection (a) ], or in defense of any claim, issue or matter therein, he shall be indemnified against expenses (including attorneys' fees) actually and reasonably incurred by him in connection therewith.

The policy of the statute and its predecessor has been described as follows, Folk, The Delaware General Corporation Law, 98 (1972):

The invariant policy of Delaware legislation on indemnification is to "promote the desirable end that corporate officials will resist what they consider" unjustified suits and claims, "secure in the knowledge that their reasonable expenses will be borne by the corporation they have served if they are vindicated." [Essential Enterprises Corp. v. Automatic Steel Prods., Inc., 39 Del.Ch. 371, 164 A.2d 437, 441–442 (Del.Chanc.1960).] Beyond that, its larger purpose is "to encourage capable men to serve as corporate directors, secure in the knowledge that expenses incurred by them in upholding their honesty and integrity as directors will be borne by the corporation they serve." [Mooney v. Willys-Over-

land Motors, Inc., 204 F.2d 888, 898 (3d Cir.' 1953) ].

MCS argues that the statute and sound public policy require indemnification only where there has been vindication by a finding or concession of innocence. It contends that the charges against claimants were dropped for practical reasons, not because of their innocence, and that in light of the conspiracy charged in the indictment, the judgment of acquittal on count four alone is not vindication.

■ The statute requires indemnification to the extent that the claimant "has been successful on the merits or otherwise." Success is vindication. In a criminal action, any result other than conviction must be considered success. Going behind the result, as MCS attempts, is neither authorized by subsection (c) nor consistent with the presumption of innocence.

■ The statute does not require complete success. It provides for indemnification to the extent of success "in defense of any claim, issue or matter" in an action. Claimants are therefore entitled to partial indemnification if successful on a count of an indictment, which is an independent criminal charge, even if unsuccessful on another, related count.

■ MCS contends that Kosow is not entitled to the benefit of the statute because he was not "a director, officer, employee or agent" of MCS. Kosow was chairman of the board and president of Industrial Finance Corporation, a wholly owned subsidiary of MCS. He served in these positions because of an employment agreement with MCS in which Kosow agreed to manage private financing and lending business activities of MCS, "subject to [its] control and direction." MCS argues that the phrase in subsection (a) expressly covering persons who serve one corporation at the request of another was intentionally omitted from subsection (c). I need not consider this argument because I conclude, based on the agreement, that

Kosow was an "employee or agent" of MCS. Because of Kosow's affidavit to the contrary, MCS has abandoned its position that he is not entitled to any benefit under the statute because it went into effect after his relationship with MCS ended.

■ MCS contends that the indictment was not related to the area of Kosow's employment or agency, and he was therefore not "made a party . . . by reason of the fact that" he was an employee or agent of MCS. The conspiracy count charged that the stock repurchase plan "would operate as a fraud and deceit upon the stockholders of [MCS]" in violation of the Securities Exchange Act of 1934, 15 U.S.C. § 78j(b), and SEC Rule 10b–5. The charge was based upon failure to disclose inside information. Kosow participated in the plan, shared the inside information, and was prosecuted because of his employment or agency relationship with MCS. He is therefore entitled to indemnification.

Wolfson and Gerbert based their claims for indemnification against expenses incurred in defense of counts three and five on subsection (a) of the statute and by-law of MCS. This is the pertinent by-law:

> Each person (and his heirs, executors and administrators) who is or has been a director or officer of the Corporation shall be indemnified by the Corporation against expenses (which shall not include any amounts paid in settlement) reasonably incurred by him or them in connection with any action, suit or proceeding to which he may be a party or with which he shall be threatened by reason of his being or having been a director or officer of the Corporation, *except in relation to matters as to which he shall finally be adjudged in such action, suit or proceeding shall be settled, shall be determined by the Corporation) to have been derelict in the performance of his duty as such director or officer.* The foregoing right of indemnification shall be in addition to any other rights to which any such director or officer

may be entitled as a matter of law. (emphasis added.)

They contend that the by-law makes indemnification, as permitted by subsection (a) of the statute, mandatory; that they met the standard of conduct set by subsection (a); and that they did not violate their fiduciary duties to MCS under Deleware law.

Although a corporation may pass a by-law making mandatory the provision for permissive indemnification in subsection (a), the MCS by-law does not do this. It comes closer to doing so with reference to the predecessor of the present statute. The former statute (8 Del.C. § 122(10) ), which was in effect when the by-law was adopted, specifically empowered corporations to indemnify,

> except in relation to matters as to which any such director or officer or former director or officer or person shall be adjudged in such action, suit or proceeding to be liable for negligence or misconduct in the performance of duty.

Compare this with the emphasized part of the MCS by-law, as quoted above.

■ The right of Wolfson and Gerbert to indemnification under the by-law, which is independent of any right under the statute, see subsection (f), depends on whether they were "adjudged in such action . . . to have been derelict in the performance of [their] duty as . . . director or officer." Wolfson was sentenced upon a plea of *nolo contendere* to count five of the indictment which charged that he

> . . . unlawfully, wilfully and knowingly, made and caused to be made a false and misleading statement of material fact in a balance sheet which was part of an annual report for Merritt for the year 1963 which was required to be filed and was filed with the New York Stock Exchange and the Securities and Exchange Commission, . . .

Gerbert was sentenced upon a guilty verdict on count three, which charged that,

> . . . having duly taken an oath as a witness that he would testify truly before a competent officer of the United States Securities and Exchange Commission, . . . did unlawfully, wilfully and knowingly and contrary to said oath state material matters which he did not believe to be true . . . .

Although a plea of *nolo contendere* may not be used as an admission in another action, upon acceptance by the court and imposition of sentence there is a judgment of conviction against the defendant. See Fed.Rules Crim.Proc., Rules 11, 32(b); Lott v. United States, 367 U.S. 421, 426, 81 S.Ct. 1563, 6 L.Ed.2d 940 (1961). The by-law, unlike subsection (a) of the statute, does not require this court to look behind the judgment. If an action does not go to judgment because of a settlement, the by-law gives MCS the power to determine whether the director or officer has been derelict in the performance of duty. Nor does the by-law prohibit indemnification only where directors or officers have been adjudged derelict in the performance of their fiduciary duty to MCS under Delaware law. Conviction of these offenses establishes that Wolfson and Gerbert were adjudged to have been derelict in the performance of their duty as director or officer, and they are therefore not entitled to indemnification against expenses incurred in connection with counts three and five.

MCS contends that the attorneys' fees claimed by Wolfson were not "reasonably incurred." While his appeal was pending after the original trial, Wolfson, although satisfied with his attorneys thus far, retained Williams, Connolly & Califano to seek a reversal by the United States Supreme Court, if necessary. That firm, assisted by the one that represented him at the first trial, represented Wolfson at the second and third trials. Its fee was $250,000 for each trial. It attributes 10 percent of its fee to defense of count five.

MCS contends that the average hourly rate received by the firm ($190) is substantially higher than the rate charged by the other equally distinguished firms representing Wolfson and his co-defendants, and is therefore unreasonable.

The standards used in determining whether fees have been "reasonably incurred" are similar to standards used by courts in awarding fees. Husband S. v. Wife S., 249 A.2d 89, 93 (Del.Supr.1972); Galdi v. Berg, 359 F.Supp. 698, 700 (D. Del.1973). While fixing a reasonable hourly rate is "a logical beginning," Lindy Bros. Bldrs., Inc. of Phila. v. American R. & S. San. Corp., 487 F.2d 161, 167 (3rd Cir., Seitz, C. J. 1973), other factors may be considered. Where indemnification is sought, the claimant will have usually assumed the risk of not being indemnified. His position when he incurred the expenses should be considered. In this case, Wolfson retained the Williams firm after he had been convicted of all counts. He faced the possibility of a prison sentence, not to mention other consequences of criminal convictions. The indictment against Wolfson, which presented novel legal and complex factual problems, was vigorously and persistently prosecuted. In retaining the Williams firm, particularly its senior partner, Edward Bennett Williams, Wolfson sought the best possible legal counsel. Williams has acquired a national reputation based upon twenty-eight years of experience in active trial practice, often in major criminal cases. He personally spent about 1600 of his firm's 2633 hours in preparation for and in two long trials, while he had to lay all other work aside. He does not charge by the hour. Partners in the firm, who customarily charge a minimum hourly rate of $100, spent about 52 hours. Associates, whose hourly rate is between $50 and $100, account for the balance of the firm's hours.

Charging a flat fee for each trial is not inherently unreasonable. For example,

it might be shown that the fee was based in part on a reasonable estimate of the hours that would be required. It is of course possible that the hourly rate will turn out to be low. Here the fees were based on the rare skill necessary to increase the hope of a successful result in an unusual and difficult case. In view of the statutory policy of indemnification for those who successfully defend actions arising from the performance of their corporate duties, I find that Wolfson's attorneys' fees were reasonably incurred.

■ Claimants seek and MCS opposes interest on the expenses incurred. The opposition is based upon the failure of the statute to provide for interest and the absence of wrongdoing on the part of MCS. Without interest on expenses actually paid, indemnification would be incomplete. I find no reason to deprive claimants of full indemnification, in accordance with the policy of the statute. Interest is not awarded because of wrongdoing by MCS but because it has had the use of the money while claimants were entitled to it.