**UNITED STATES of America,
Plaintiff-Appellant,**

v.

**George S. McLEAN, Defendant-Appellee.**

No. 83–2452.

United States Court of Appeals,
Fifth Circuit.

Aug. 10, 1984.

Rehearing Denied Sept. 19, 1984.

Daniel K. Hedges, U.S. Atty., James R. Gough, Asst. U.S. Atty., Houston, Tex., Mervyn Hamburg, Atty., Appellate Section, Criminal Division, U.S. Dept. of Justice, Washington, D.C., for plaintiff-appellant.

George S. McLean, pro se.

Before JOHNSON, HIGGINBOTHAM, and DAVIS, Circuit Judges.

## W. EUGENE DAVIS, Circuit Judge:

We are presented for the first time with the question of whether the Foreign Corrupt Practices Act (FCPA) permits the prosecution of an employee for a substantive offense under the Act if his employer has not and cannot be convicted of similarly violating the FCPA. We conclude that the Act prohibits such a prosecution and affirm the district court.

### I.

During the late 1970's Petroleos Mexicanos (Pemex), the national petroleum company of Mexico, purchased large quantities of turbine compressor equipment to capture and pump to processing plants a high volume of natural gas. The Solar division of International Harvester Company (Harvester) was the dominant worldwide supplier of such equipment. George S. McLean was its vice-president and Luis A. Uriarte was its Latin American regional manager; both were Harvester employees. Crawford Enterprises, Inc., (CEI) was a broker and lessor of gas compression systems which frequently purchased equipment from Harvester for resale or lease. Harvester, as prime contractor, had supplied Pemex with equipment in the mid-Seventies; during the period of accelerated development in the late 1970's, however, Harvester acted as a subcontractor for CEI, which had contracted with Pemex to build complete compression plants.

In early 1979, the United States initiated grand jury investigations into allegations that American businessmen had bribed Mexican officials in violation of the FCPA. On October 22, 1982, a forty-nine count indictment was returned in federal district court charging CEI and nine individuals, including McLean and Uriarte, with one conspiracy count to use interstate or foreign instrumentalities for the purpose of bribing Pemex officials in violation of 18 U.S.C. § 371 (1966), forty-seven substantive counts in violation of the FCPA, 15 U.S.C. §§ 78dd–2(a)(1) and (3), § 78dd–2(b) (1981), and one obstruction of justice count in violation of 18 U.S.C. § 1503 (1966).[1] McLean and Uriarte were named in the single conspiracy count and in forty-three substantive counts of aiding and abetting

---

**1.** 15 U.S.C. § 78dd–2 provides, in relevant part:

(a) It shall be unlawful for any domestic concern, other than an issuer which is subject to section 78dd–1 of this title, or any officer, director, employee, or agent of such domestic concern or any stockholder thereof acting on behalf of such domestic concern, to make use of the mails or any means or instrumentality of interstate commerce corruptly in furtherance of an offer, payment, promise to pay, or authorization of the payment of any money, or offer, gift, promise to give, or authorization of the giving of anything of value to—

(1) any foreign official for purposes of—

(A) influencing any act or decision of such foreign official capacity, including a decision to fail to perform his official functions; or

(B) inducing such foreign official to use his influence with a foreign government or instrumentality thereof to affect or influence any act or decision of such government or instrumentality,

in order to assist such domestic concern in obtaining or retaining business for or with, or directing business to, any person;

(3) any person, while knowing or having reason to know that all or a portion of such money or thing of value will be offered, given, or promised, directly or indirectly, to any foreign official, to any foreign political party or official thereof, or to any candidate for foreign political office, for purposes of—

(A) influencing any act or decision of such foreign official, political party, party official, or candidate in his or its official capacity, including a decision to fail to perform his or its official functions; or

(B) inducing such foreign official, political party, party official, or candidate to use his or its influence with a foreign government or instrumentality thereof to affect or influence any act or decision of such government or instrumentality,

in order to assist such domestic concern in obtaining or retaining business for or with, or directing business to, any person.

CEI in violating FCPA and 18 U.S.C. § 2 (1969). Although McLean and Uriarte's employer, Harvester, was not charged in the forty-nine count indictment, the government concedes that all acts of McLean and Uriarte were committed within the scope of their employment with Harvester.

The indictment charges the defendants with participating in a plan to bribe Pemex officials in order to sell turbine compression equipment to Pemex.

On November 17, 1982, Harvester entered a guilty plea to a one count bill of information charging conspiracy to violate the FCPA. In the plea agreement with Harvester, the government agreed to bring no further charges against Harvester arising out of its sales to CEI and Pemex. McLean was named but not charged as a co-conspirator with Harvester in that proceeding. The bill of information filed against Harvester included eleven of the twelve overt acts alleged against Harvester or its employees in the forty-nine count indictment charging McLean and Uriarte with conspiracy to violate the Act.

Both McLean and Uriarte filed motions to dismiss the charges pending against them on grounds that the failure of the government to convict Harvester of a violation under the FCPA barred their prosecution. The district court dismissed the substantive counts, but denied the motion to dismiss the conspiracy charge. The court concluded that the Eckhardt Amendment, 15 U.S.C. § 78ff [2], permits the conviction of an employee under the FCPA only if the employer (termed an issuer or domestic concern under the Act) was convicted of violating the FCPA. The district court concluded that since Harvester's plea of guilty to conspiracy was not a substantive FCPA violation, McLean and Uriarte could not be prosecuted for the substantive counts.

The government presents three arguments on appeal: (1) the "found to have violated" provision does not require that the employer be convicted of a FCPA violation; this requirement may be satisfied by establishing in the employee's trial that the employer violated the Act; (2) McLean, as an individual domestic concern, may be charged with aiding and abetting CEI and; (3) International Harvester's conviction of conspiracy satisfies the "found to have violated" requirement.[3]

II.

Our task in interpreting the FCPA "is to construe the language so as to give effect to the intent of Congress." *United States v. Am. Trucking Ass'ns*, 310 U.S. 534, 542, 60 S.Ct. 1059, 1063, 84 L.Ed.2d 1345 (1940). To do so, we look primarily to the language of the statute and secondarily to its legislative history, which includes "the purpose the original enactment served, the discussion of statutory meaning in committee reports, the effect of amendments—whether accepted or rejected—and the remarks in debate preceding passage." *Rogers v. Frito-Lay, Inc.*, 611 F.2d 1074, 1080 (5th Cir.), *cert. denied*, 449 U.S. 889, 101 S.Ct. 246, 66 L.Ed.2d 115 (1980).

The substantive violations of the Act are established in two sections. Section 78dd–1 makes it unlawful for an issuer (defined as an entity subject to the securities registration requirements of § 78*l* and 78*o* of Title 15), its officers, directors, employees or agents, to use the mails or other instrumentality of interstate commerce to bribe foreign officials for various purposes including to obtain business. Section 78dd–2 provides generally the same prohibition for

---

**2.** Section 78ff U.S.C. 15 provides in pertinent part:

(c)(3) Whenever an issuer is found to have violated section 78dd–1(a) of this title, any employee or agent of such issuer who is a United States citizen, national, or resident or is otherwise subject to the jurisdiction of the United States (other than an officer, director, or stockholder of such issuer), and who willfully carried out the act or practice constitut-

ing such violation shall, upon conviction, be fined not more than $10,000, or imprisoned not more than five years or both.

**3.** The government dismissed its indictment against Uriarte in late 1983 after Uriarte pled guilty to a one-count information charging him as an accessory after the fact on one of the FCPA violations.

a domestic concern, its officers, directors, shareholders and employees. Domestic concern is broadly defined to include any United States citizen, national or resident; or any corporation (other than an issuer), partnership or other entity subject to United States jurisdiction and control.

Section 78ff(c)(3) provides the penalties applicable to employees of issuers. That provision provides in part that: "whenever an issuer is found to have violated section 78dd–1(a) of this title, any employee or agent of such issuer who is a United States citizen, national or resident or is otherwise subject to the jurisdiction of the United States (other than an officer, director or stockholder of such issuer), and who willfully carried out the act or practice constituting such violation shall, upon conviction," be subject to fine and/or imprisonment. Section 78dd–2(b)(1)(B)(3) contains a similar provision for the employees and agents of a domestic concern. These two sections with the "found to have violated" prerequisite are collectively referred to as the Eckhardt Amendment, after former Congressman Bob Eckhardt, the leading proponent of the provision.

Hearings were conducted on the precurser to the final version of the Eckhardt Amendment in April of 1977 by the subcommittee of the House Interstate and Foreign Commerce Committee. The subcommittee examined two proposed bills: (1) H.R. 3815, introduced by Congressman Bob Eckhardt, which imposed as a prerequisite to the conviction of an employee a showing of violation of the Act by the issuer or domestic concern, and (2) H.R. 1602 which had no such requirement.

At the hearing, Congressman Eckhardt, the subcommittee chairman, in discussing H.R. 3815 with Harold M. Williams, Chairman of the Securities and Exchange Commission (SEC) and Harvey L. Pitt, general counsel of the SEC stated:

> "Indeed, the corporations [sic] interest might even be in conflict with that of the agent. The corporation might desire to have Joe Bloke found to have intentionally engaged in bribery and to have been the sole moving agent, that is, the company never agreed to it and the quicker they can convict Joe Bloke, the better off the company is. It is relieved of responsibility and it has a sacrificial lamb in Rome and everybody forgets about the activity.[4]

Congressman Eckhardt pointed out the dependence of the agent on the corporation for an adequate defense since the corporation, due to its superior resources, would be in a much better position than the employer to defend against accusations of wrongdoing in a foreign country.[5] He articulated concern over legislation that would require the agent alone to bear the burden of refuting allegations of FCPA violations. He was also troubled about giving the uncharged corporate employer incentive to both disavow knowledge of the agent's activity and to let the agent bear all responsibility for the wrongdoing.

This problem was avoided, as Pitt explained, because what would become the Eckhardt Amendment "would require the government ... to prove in the first instance that the issuer had violated the section, because that is the condition precedent to the holding of any agent responsible."[6] He noted that if there was doubt about the employer's violation of the Act, then the employee could not be held liable.[7] Pitt added that "[B]ecause of the conditional predicate ... the issuer and the agent have a community of interest; that is, the agent would be protected by the issuer in

---

4. **Unlawful Corporate Payments Act of 1977: Hearings on H.R. 3815 and H.R. 1602 before the Subcomm. on Consumer Protection and Finance,** 95th Cong., 1st Sess. 229 (1977) (statement of Bob Eckhardt, subcommittee chairman).

5. Id.

6. **Unlawful Corporate Payments Act of 1977: Hearings on H.R. 3815 and H.R. 1602 before the Subcommittee on Consumer Protection and Finance,** 95th Cong., 1st Sess. 231 (1977) (statement of Harvey L. Pitt, general counsel of SEC).

7. Id.

at least those cases where the issuer chooses to contest the violation." [8]

Pitt also suggested that employees of issuers be grouped with agents instead of officers, directors and stockholders because the concerns voiced by Eckhardt about agents applied equally to employees; this suggestion was ultimately adopted. H.R. Rep. No. 831, 95th Cong., 1st Sess. 13, **reprinted in** 1977 U.S.CODE CONG. & AD.NEWS 4098, 4121, 4125.

The report accompanying H.R. 3815 explained its salient features as follows:

> The bill specifically provides that an agent of an issuer, as distinguished from an officer, director or other person in a policymaker position, shall not be subject to the penalties of the bill until it is shown in a separate proceeding or in the proceeding against such agent that the issuer itself was in violation of the provisions of the bill. This provision reflects the Committee's concern that in some instances a low level employee or agent of the corporation—perhaps the person who is designated to make the payment—might other wise [sic] be made the scapegoat for the corporation. The essential elements of these prosecutions will presumably take place on foreign soil. Such an agent or employee unlike the corporation possibly would not have the resources, legal or financial, to provide witnesses necessary to his defense. Accordingly, the practical effect of sections 2(c)(2) and 3(c)(2) is to require the corporation to bring in witnesses to rebut the contention of its involvement. These witnesses would then be available to the agent in his defense.

H.R.Rep. No. 640 95th Cong., 1st Sess. 11 (1977).

The final bill retained the "found to have violated" language of H.R. 3815. This predicate for liability, the Conference Committee stated, would "provide additional protection for agents and employees." H.R.Rep. No. 831, 95th Cong., 1st Sess. 13, **reprinted in** 1977 U.S.CODE CONG. & AD.NEWS 4121, 4125.

Thus, both the language of the Act and its legislative history reveal a clear intent to impose criminal sanctions against the employee who acts at the behest of and for the benefit of his employer only where his employer has been convicted of similar FCPA violations.

### (A)

■ We therefore reject the government's contention that it may satisfy the predicate required by the Eckhardt Amendment by showing in McLean's trial as an element of McLean's offense that McLean's employer violated the Act. A major objective of the Eckhardt amendment is to allow the employee the benefit of the superior resources of the corporation in presenting a defense in the criminal proceeding; a closely related objective is to prevent the employer from making its employee a scapegoat. To permit the government to prosecute McLean and attempt to make a case against unindicted Harvester at McLean's trial places McLean in the undesirable position of defending not only himself, but also his employer—without the benefit of the employer's resources and knowledge. Harvester would have no incentive to assist McLean in his defense; in fact Harvester would have every incentive to shift as much culpability as possible to McLean. This is precisely what the Eckhardt Amendment is intended to prevent.

### (B)

■ The government asserts, however, that it may prosecute McLean for aiding and abetting CEI,[9] not as an employ-

---

8. Id. Pitt also stated that protection of the Eckhardt Amendment would not extend to "an agent who had run amuck and was not acting pursuant to corporate order," that is, a renegade employee.

9. The legislative history indicates that aiding and abetting charges may be brought under the Act. ("The concepts of aiding and abetting and joint participation would apply to a violation under this bill ....") H.R.Rep. No. 640, 95th Cong., 1st Sess. 8. Indeed, absent an express provision to the contrary, aiding and abetting is

ee of Harvester, but in his individual capacity as a domestic concern. The government does not contend that McLean was a "renegade employee". To the contrary, it concedes McLean acted only on behalf of and for the benefit of his employer, Harvester. It is a basic canon of statutory construction that "a statute should not be construed in such a way as to render certain provisions superfluous or insignificent." *Woodfork v. Marine Cooks & Stewards Union,* 642 F.2d 966, 970–71 (5th Cir.1981).

We conclude that under the statutory scheme, where McLean acted as an employee of an issuer he must be prosecuted in this capacity. Otherwise, the Eckhardt Amendment would be entirely eviscerated. If we adopt the government's position, the government could prosecute employees of Harvester with aiding and abetting CEI and prosecute employees of CEI with aiding and abetting Harvester without indicting either Harvester or CEI. This "end-run" maneuver around the Eckhardt Amendment would render it meaningless and we therefore reject the government's argument.

### (C)

 The government also argues that Harvester's plea of guilty to conspiracy to violate the FCPA satisfies the Act's requirement of a predicate violation by the employer. We disagree. The Act requires a finding that the employer "violate[d] section 78dd–1(a)" of the Act. It is well-settled that a conspiracy to commit an offense and the commission of a substantive offense are separate and distinct crimes. *Iannelli v. United States,* 420 U.S. 770, 777, 95 S.Ct. 1284, 1288, 43 L.Ed.2d 616,

622 (1975), *U.S. v. Romeros,* 600 F.2d 1104, 1105 (5th Cir.1979), *cert. denied,* 444 U.S. 1077, 100 S.Ct. 1025, 62 L.Ed.2d 759 (1980), *U.S. v. Ragano,* 520 F.2d 1191 (5th Cir. 1975), *cert. denied,* 427 U.S. 905, 96 S.Ct. 3192, 49 L.Ed.2d 1199 (1976). Thus, a conspiracy to commit a violation does not satisfy the clear requirement of the Act.

### III

 We hold that in order to convict an employee under the FCPA for acts committed for the benefit of his employer, the government must first convict the employer. Because the government failed to convict Harvester and under the plea agreement will be unable to indict Harvester and try it with McLean, the Act bars McLean's prosecution.[10]

AFFIRMED.

---

included as an offense of every federal crime. See *United States v. Ruffin,* 613 F.2d 408, 421 (2d Cir.1979) (Wyatt, J. dissenting); *United States v. Standefer,* 610 F.2d 1076, 1081 (3d Cir.1979), *aff'd.,* 447 U.S. 10, 100 S.Ct. 1999, 64 L.Ed.2d 689 (1980).

**10.** McLean urges us to invoke "our equitable powers" and dismiss the conspiracy count still pending against him. Since McLean has not filed a cross-appeal, this issue is not properly

before us. In addition, a denial of a motion to dismiss an indictment is not ordinarily a final decision for purposes of 28 U.S.C. § 1291 (1976) and is therefore unappealable. *See United States v. Sisk,* 629 F.2d 1174, 1180 (6th Cir. 1980), *cert. denied,* 449 U.S. 1084, 101 S.Ct. 871, 66 L.Ed 2d 809 (1981); *Abney v. U.S.,* 431 U.S. 651, 662–63, 97 S.Ct. 2034, 2041–42, 52 L.Ed.2d 651 (1977); *U.S. v. Rey,* 641 F.2d 222, 224 (5th Cir.1981).