**George S. McLEAN, Plaintiff-Appellant,**

v.

**INTERNATIONAL HARVESTER COMPANY, (Now known as Navistar International Company), et al., Defendants-Appellees.**

No. 86–2454.

United States Court of Appeals, Fifth Circuit.

June 2, 1987.

Opinion on Denial of Rehearing July 16, 1987.

Charles J. Sullivan, Houston, Tex., for plaintiff-appellant.

Tom Collins, Sheinfeld, Maley & Kay, Houston, Tex., James P. Cusick, Kirkland & Ellis, Chicago, Ill., for defendants-appellees.

Before GARZA, WILLIAMS and GARWOOD, Circuit Judges.

GARZA, Circuit Judge:

George S. McLean, a former employee of International Harvester Company, sought relief from International Harvester and several present and former directors and counsel of the company. McLean alleged, *inter alia,* that the defendants conspired to violate his civil rights, cast him in a false light, and neglected to indemnify him for legal fees in a criminal proceeding. At trial, Judge Bue dismissed eight of Mc-Lean's claims pursuant to Rule 12(b)(6), Fed.R.Civ.P., and granted summary judgment for the defendants on the indemnification question.

On appeal, McLean challenges the district court's disposition of six of the nine causes of action. McLean also complains of the trial court's limitations on discovery and its denial of McLean's motion to file a Fourth Amended Complaint. We agree with the district court that McLean has failed to state a cognizable claim for relief under any of the stated causes of action. Additionally, the district court did not abuse its discretion by structuring discovery as it did and in refusing to allow McLean to file a Fourth Amended Complaint. We do find, however, that McLean did not waive his right to be reimbursed by International Harvester for his legal expenses, and therefore reverse the judgment of the district court on that single point.

## I.

McLean was the vice-president of International Harvester's Solar Turbines International Division (Solar) when he left the company on December 15, 1980. Seven months later, the United States Department of Justice announced that Solar was the target of a federal grand jury investigation into violations of the Foreign Corrupt Practices Act (FCPA). The Depart-

ment of Justice alleged that during the late 1970's, certain International Harvester employees, including McLean, had violated the FCPA in dealings with officials from Petroleos Mexicanos (Pemex). Pemex, Mexico's national petroleum company, purchased large volumes of turbine compressor equipment from Solar.

On October 22, 1982, McLean, among others, was formally charged with one count of conspiracy and 43 counts of aiding and abetting violations of the FCPA.[1] On November 18, 1982, International Harvester pled guilty under a respondeat superior theory to a one-count bill of information charging conspiracy to violate the FCPA. The United States accepted International Harvester's waiver of indictment and its guilty plea when company attorneys persuaded Justice Department officials that an indictment would exact an enormous financial toll on the company. International Harvester stated it was pleading guilty so it could devote all its economic and managerial resources to its voluntary restructuring effort. In connection with the plea of International Harvester the government filed an offer of proof. Statements included in the information, the plea bargain, and the offer of proof underlie McLean's present action.

Although McLean was not charged in the information, having earlier been indicted, the information alleged that McLean and others violated the FCPA. Likewise, the offer of proof essentially accused McLean of violating the FCPA. During the hearing held prior to court approval of the plea bargain, Elmer Johnson, International Harvester's former general counsel, told the court that the company "accept[ed] the strong representation of the U.S. Justice Department that they have more than adequate evidence to prove that two of our former employees ... aided and abetted violations of the Foreign Corrupt Practices Act. We simply are not in a position to verify those representations." This statement also appeared in an International

---

**1.** During McLean's criminal pre-trial, the district court dismissed the 43 substantive counts against him. McLean was tried and acquitted of the remaining criminal conspiracy charge.

Harvester press release which announced the plea agreement.

Because McLean believed that the company's plea negotiations and guilty plea had the effect of implicating him in the bribery scheme, McLean has struggled to clear his name. Initially, he sought to have his name expunged from the information and related documents in which he was named but not charged as a coconspirator. The district court denied the motion and the Fifth Circuit affirmed. *United States v. International Harvester Co.,* 720 F.2d 418 (5th Cir.1983), *cert. denied,* 466 U.S. 939, 104 S.Ct. 1915, 80 L.Ed.2d 463 (1984). This Court observed that the charges against McLean in the indictment and those alleged in the information were the same or closely related. Thus, his constitutional right to defend himself against the charges were not violated because he would be tried on the indictment. *Id.* at 420.

McLean then filed motions to dismiss all 44 counts against him. Pursuant to the Eckhardt Amendment, 15 U.S.C. § 78ff(c)–(3),[2] McLean suggested that an employee could not be convicted of a criminal offense under the FCPA unless his employer also was convicted. In *United States v. McLean,* 738 F.2d 655 (5th Cir.1984), *cert. denied,* 470 U.S. 1050, 105 S.Ct. 1748, 84 L.Ed.2d 813 (1985), this Court construed the Eckhardt Amendment to prohibit the imposition of criminal sanctions under the FCPA against the employee "who acts at the behest of and for the benefit of his employer," unless "his employer has been convicted of similar FCPA violations." *Id.* at 659. We affirmed the district court's dismissal of the 43 substantive counts against McLean because the company had not been convicted of any substantive FCPA violations. As for the conspiracy count, McLean was later tried and acquitted.

In this suit, McLean, his wife, and their children seek $27 million dollars in damages against International Harvester, two current and one former director of the company, one former general counsel of the company, and three of the company's outside attorneys. McLean's nine-count Third Amended Complaint alleged claims under 42 U.S.C. § 1985(2), 42 U.S.C. § 1985(3), Title 8, § 145 of the Delaware Code, Del. Code Ann. tit. 8, § 145, and six common law doctrines. On January 13, 1986, after numerous motions and orders had been filed and rendered, the enduring district court judge dismissed eight counts of the Third Amended Complaint pursuant to Rule 12(b)(6).[3] He also ordered McLean to file a more definite statement of the indemnification claim alleged in Count Six. Finally, the judge denied as moot McLean's motions to compel production of documents and for leave to file a Fourth Amended Complaint.

On January 22, 1986, McLean filed a more definite statement of his indemnification claim. He prayed for $158,816.91 in out-of-pocket legal expenses incurred in the defense of his criminal trial. On February 24, 1986, the defendants moved for summary judgment as to this remaining count, arguing that McLean had voluntarily waived and renounced any right to indemnification. On May 15, 1986, after submission of written briefs and oral argument, the lower court entered summary judgment in favor of the defendants, holding that McLean as a matter of law had waived any claim to indemnification.

---

**2.** The Eckhardt Amendment, codified at 15 U.S.C. § 78ff(c)(3), provides as follows:

Whenever an issuer is found to have violated section 78dd–1(a) of this title, any employee or agent of such issuer who is a United States citizen, national, or resident or is otherwise subject to the jurisdiction of the United States (other than an officer, director, or stockholder of such issuer), and who willfully carried out the act or practice constituting such violation shall, upon conviction, be fined not more than $10,000, or imprisoned not more than five years or both.

**3.** Because the district court dismissed eight of McLean's claims under Rule 12(b)(6), our review focuses on the standard that "a complaint should not be dismissed for failure to state a claim unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Conley v. Gibson,* 355 U.S. 41, 45–6, 78 S.Ct. 99, 102, 2 L.Ed.2d 80 (1957); *see Jones v. United States,* 729 F.2d 326, 330 (5th Cir.1984).

## II.

In Counts One through Five and Seven of the Third Amended Complaint, McLean pleads causes of action arising out of International Harvester's decision to plead guilty to a bill of information charging conspiracy to violate the FCPA. All of the stated actions focus on the plea negotiations as the basis for relief. McLean theorizes that the company's plea bargain and guilty plea give rise to a claim for damages because, in effect, the company implicated McLean in the alleged FCPA scheme. In essence, McLean has alleged that the government was involved in a conspiracy with International Harvester which resulted in a favorable plea agreement for the company, while leaving McLean as a scapegoat. Our third review of this litigation finds us disagreeing with McLean's contentions.

### 42 U.S.C. § 1985(2)

██ McLean first alleged that the defendants conspired to interfere with his civil rights, and that such conduct was violative of 42 U.S.C. § 1985(2). That section consists of two parts. The first part of § 1985(2) creates a private right of recovery against persons who by "force, intimidation, or threat" prevent parties or witnesses from attending or testifying in court.[4] It also forbids the use of "force, intimidation, or threat" to influence verdicts and indictments. A cause of action under this section requires conspiratorial conduct that directly affects or attempts to affect parties, witnesses or jurors in a federal court. *Brown v. Chaffee,* 612 F.2d 497, 502 (10th Cir.1979); *Brawer v. Horowitz,* 535 F.2d 830, 840 (3d Cir.1976).

██ McLean has not alleged any direct deterrence of testimony by force, intimidation or threat. His sole basis for seeking such relief rests on the allegations that the defendants gave false testimony in court, failed to disclose information to McLean, and failed to produce documents to Mc-

Lean. Clearly, such allegations, even if proved, are insufficient to state a violation of § 1985(2). *See Brown,* 612 F.2d at 502 (no claim arises under § 1985(2) for failure to present favorable evidence at trial); *Brawer,* 535 F.2d at 840 (no claim arises under § 1985(2) for using perjured testimony). Neither the actions of International Harvester nor of the remaining defendants interfered with McLean's or any other person's right to attend court and testify freely. Furthermore, because perjured testimony does not give rise to an action under § 1985(2), the defendants' allegedly false statements, made before McLean's trial, cannot be the basis of a cause of action under this section. For this fundamental reason Count One was properly dismissed.

### 42 U.S.C. § 1985(3)

McLean next alleged that the defendants conspired to interfere with his civil rights in violation of 42 U.S.C. § 1985(3). In pertinent part, that section establishes a private right of recovery from any persons who conspire, directly or indirectly, to deprive any individual of the equal protection of the law or of equal privileges and immunities under the law. 42 U.S.C. § 1985(3). A cause of action under § 1985(3) requires "some racial, or perhaps otherwise class-based, invidiously discriminatory animus behind the conspirators' action." *Griffin v. Breckenridge,* 403 U.S. 88, 102, 91 S.Ct. 1790, 1798, 29 L.Ed.2d 338 (1971); *McLellan v. Mississippi Power & Light Co.,* 545 F.2d 919, 928 (5th Cir.1977).

The Supreme Court has indicated that § 1985(3) may prohibit only racially-motivated conspiracies. "[I]t is a close question whether § 1985(3) was intended to reach any class-based animus other than animus against Negroes and those who championed their cause." *United Bhd. of Carpenters and Joiners v. Scott,* 463 U.S. 825, 836, 103 S.Ct. 3352, 3360, 77 L.Ed.2d 1049 (1983). Consistent with *Scott,* this Court has expressly cautioned against extension

---

**4.** The second part of § 1985(2) applies to conspiracies to obstruct the course of justice in state courts. *Ryland v. Shapiro,* 708 F.2d 967, 973 n. 7 (5th Cir.1983). McLean provides no

allegations that the defendants' conduct interfered with any state court proceedings. All of his allegations are limited to the various federal court proceedings.

of § 1985(3) beyond the racial prejudice it was enacted to address:

> [S]ection 1985(3) will not be extended to every class which the artful pleader can contrive.... We remain mindful ... of the Supreme Court's evident concern in *Griffin* over the broad literal sweep of the statute. That concern dictates the exercise of restraint when a court is confronted with class-based discrimination grounded in a non-racial animus.

*McLellan*, 545 F.2d at 928–29. Since *McLellan*, this Court has held that only two types of classes are protected by § 1985(3): 1) those characterized by "some inherited or immutable characteristic;" and 2) those characterized by "political beliefs or associations." *Kimble v. D.J. McDuffy, Inc.*, 623 F.2d 1060, 1066 (5th Cir.1980), *reh'g granted*, 648 F.2d 340 (5th Cir.) (en banc), *cert. denied*, 454 U.S. 1110, 102 S.Ct. 687, 70 L.Ed.2d 651 (1981).

■ McLean has alleged no racial or otherwise class-based invidious discriminatory animus behind the defendants' conduct. McLean argues that some employees were made FCPA scapegoats by their employers, and thus a discriminated class exists. We find no merit in this claim because that group is neither well-defined nor traditionally disadvantaged. *See Orshan v. Anker*, 489 F.Supp. 820, 823 (E.D.N.Y.1980). The class does not possess discrete, insular and immutable characteristics similar to race, national origin or sex. *See Murphy v. Mount Carmel High School*, 543 F.2d 1189, 1192 n. 1 (7th Cir.1976).

Additionally, McLean has not alleged an independent violation of his rights as established in § 1985(3). His failure to properly allege any specific denial of equal protection or of his privileges and immunities is likewise fatal to his claim. As this Court has already found, McLean's constitutional rights have not been violated in any way. *United States v. International Harvester Co.*, 720 F.2d 418 (5th Cir.1983), *cert. denied*, 466 U.S. 939, 104 S.Ct. 1915, 80 L.Ed.2d 463 (1984). It is evident that the district court correctly held that Count Two does not state a cause of action.

### 15 U.S.C. § 78ff(c)(3)

McLean explains in his third count that International Harvester's guilty plea had the effect of making him a "scapegoat" in the FCPA scheme. McLean neither alleges the elements of this cause of action nor discusses its applicability to the facts of this case. His sole argument is that scapegoating is prohibited by the Eckhardt Amendment to the FCPA.

■ The Eckhardt Amendment establishes criminal penalties for corporate employees convicted of violating the FCPA. It provides that an employee may not be convicted of a particular criminal offense unless his corporate employer also is convicted. We find no authority for McLean's suggestion that the Eckhardt Amendment creates its own private cause of action. Likewise, McLean has not revealed to us any case or statute which supports his position. Based on the factors enunciated in *Cort v. Ash*, 422 U.S. 66, 78, 95 S.Ct. 2080, 2088, 45 L.Ed.2d 26 (1975), we find it inappropriate to imply a private cause of action from the statute. The statute on its face shows no congressional intent to create a private action. Moreover, no legislative history exists referring to such an intent. We find that the district court correctly dismissed Count Three of the complaint because scapegoating has not been recognized as a cause of action in any jurisdiction.[5]

### False Light

McLean also has purported to plead a cause of action against the defendants for false light invasion of privacy. McLean argues that false or misleading statements were included in the offer of proof and in certain oral communications, and that those statements were not privileged. Texas has

---

**5.** Although McLean sought to appeal from the district court's dismissal of Count Four, McLean does not address the legal deficiencies of that issue in his appellate brief. McLean purported to plead a claim for Negligent Acceptance and Affirmation of Allegations by the United States about McLean. This issue not being briefed or argued, is waived and thus we need not determine whether a viable cause of action was alleged.

adopted the Restatement (Second) of Torts concept of false light. *Wood v. Hustler Magazine, Inc.,* 736 F.2d 1084, 1088 (5th Cir.1984), *cert. denied,* 469 U.S. 1107, 105 S.Ct. 783, 83 L.Ed.2d 777 (1985). The Restatement provides as follows:

Publicity Placing Person in False Light

One who gives publicity to a matter concerning another that places the other before the public in a false light is subject to liability to the other for invasion of his privacy, if

(a) the false light in which the other was placed would be highly offensive to a reasonable person, and

(b) the actor had knowledge of or acted in reckless disregard as to the falsity of the publicized matter and the false light in which the other would be placed.

Restatement (Second) of Torts § 652E (1977). McLean's tenuous false light claim must fail because all of the statements were made within the confines of a judicial proceeding by the defendants, and were therefore absolutely privileged.

■ As a matter of law, communications made during a court's proceedings are absolutely privileged and are immune from an action alleging defamation or invasion of privacy. *James v. Brown,* 637 S.W.2d 914, 916 (Tex.1982); *Wolfe v. Arroyo,* 543 S.W.2d 11, 13 (Tex.Civ.App.1976). The Restatement provides that the privileges applicable in defamation actions also "apply to the publication of any matter that is an invasion of privacy." Restatement (Second) of Torts § 652F. According to the Restatement, judges, attorneys, parties, and witnesses may publish defamatory ma-

terial, and thus false light material, preliminary to or in the course of judicial proceedings if the material is related to the proceedings. *Id.* at §§ 585–88. These privileges exist in Texas. *See Reagan v. Guardian Life Ins. Co.,* 140 Tex. 105, 166 S.W.2d 909, 912 (1942).

■ McLean complains about: 1) statements made in various drafts of the written plea bargain agreement; 2) statements contained in the written offer of proof filed with the court at the time of the company's guilty plea; and 3) oral statements made by the company's representatives at the arraignment hearing.[6] Because all of these alleged falsehoods were uttered in connection with and were related to International Harvester's plea bargain, they cannot support an action for false light as a matter of law.[7] Count Five, therefore, was properly dismissed.

Civil Conspiracy

■ There are two essential elements to establish an actionable claim for civil conspiracy. First, there must be an unlawful purpose or an unlawful means of carrying out a lawful purpose by two or more persons. Second, there must be at least one unlawful and overt act. *Massey v. Armco Steel Co.,* 652 S.W.2d 932, 934 (Tex. 1983). McLean argues that the defendants' statements during the plea bargaining process violated various canons of the Texas Code of Professional Responsibility. However, he did not rely on or cite these alleged canon violations in his Third Amended Complaint. For the necessary unlawful act, McLean wholly relied on the tort of false light and the defendants' al-

---

**6.** The press statement arguably does not fall within the privilege because it was released after the plea bargain proceedings ended. However, the offensive matter in the release is a mere quotation of statements by the company's counsel during the judicial proceeding at which the court accepted the plea. Those comments were privileged and it would "unreasonably impair the privilege" to hold that the press release could not quote the privileged comments. *See Wyatt v. Kaplan,* 686 F.2d 276, 282 (5th Cir. 1982). Furthermore, the press release did not identify any employees by name, and thus it placed no specific person in a false light.

**7.** In addition, a cause of action for false light requires that the statements about the plaintiff

be false. In this case, McLean has not established that the defendants made any false statements. Indeed, the company was cautious to not damage the reputations of its employees. Elmer Johnson, the former general counsel for International Harvester, was careful to point out:

[W]e accept the strong representation of the U.S. Justice Department that they have more than adequate evidence to prove that two of our former employees of a former division aided and abetted violations of the Foreign Corrupt Practices Act. We simply are not in a position to verify those representations.

leged violations of §§ 1985(2) and 1985(3). As explained, McLean has not alleged a cause of action under § 1985, and due to the privilege discussed *infra,* he has no actionable civil conspiracy claim.[8] We have found that the company did not enter into any unlawful activity, and therefore did not conspire to plea bargain or to enter a guilty plea.

Additionally, for a civil conspiracy claim to be actionable there must be an unlawful overt act in furtherance of the conspiracy. McLean suggests that tender of the Offer of Proof and defendant Johnson's oral affirmation of the statement in the Offer of Proof constitute overt acts. Our study indicates that those actions were neither unlawful nor a violation of McLean's protected rights. Therefore, we agree with the district court's judgment in dismissing Count Seven.

### Indemnification of Legal Fees

The district court entered summary judgment on behalf of International Harvester against McLean's claim for indemnification of attorneys' fees incurred while defending himself from criminal prosecution. Summary judgment is appropriate only when the record shows "that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(c).

Delaware law controls a corporation's indemnification of employees for legal expenses arising out of actions taken during their employment. Del.Code Ann. tit. 8, § 145. Section 145(a) permits indemnifica-tion of corporate employees and agents involved in litigation.[9] Section 145(c) requires indemnification of corporate employees and agents who successfully defend themselves in litigation.[10] *See Galdi v. Berg,* 359 F.Supp. 698 (D.Del.1973) (explanation and application of Delaware indemnification statute); *Green v. Westcap Corp. of Delaware,* 492 A.2d 260, 265 (Del. Sup.1985) (same). International Harvester maintains that McLean knowingly and voluntarily waived his indemnification rights contained in the Delaware statute.

International Harvester paid for McLean's attorney while both McLean and International Harvester were under investigation and indictment by the United States. McLean had already left the company for other reasons. The company was able to advance McLean necessary fees and expenses under the discretionary part of the Delaware indemnification statute, which permits a corporation to pay the legal costs of defending its employees or former employees if the company so desires. McLean accepted the representation of counsel provided by International Harvester when both were under investigation. McLean executed an agreement between himself and International Harvester agreeing to pay all fees and expenses if, at the conclusion of all proceedings, he was found not to be entitled to indemnification under Delaware law. Thus, his legal fees throughout the 1981–82 grand jury investigation were received in advance and as needed from International Harvester.

---

**8.** The torts of false light and defamation cannot serve as the requisite overt unlawful act because, as described, the elements of that tort are privileged in this case. Allowing a recovery for civil conspiracy having as its overt act either of these torts would eviscerate the privilege in any case where the false light resulted from joint action.

**9.** Section 145(a) reads, in pertinent part:

A corporation shall have power to indemnify any person who was or is a party or is threatened to be made a party to any threatened, pending or completed action, suit or proceeding, whether civil, criminal, administrative or investigative (other than an action by or in the right of the corporation) by reason of the fact that he is or was a director, officer, employee or agent of the corporation, ... against expenses (including attorneys'

fees), judgments, fines and amounts paid in settlement actually and reasonably incurred by him in connection with such action, suit or proceeding if he acted in good faith and in a manner he reasonably believed to be in or not opposed to the best interests of the corporation, and, with respect to any criminal action or proceeding, had no reasonable cause to believe his conduct was unlawful.

**10.** Section 145(c) reads in its entirety:

To the extent that a director, officer, employee or agent of a corporation has been successful on the merits or otherwise in defense of any action, suit or proceeding referred to in subsections (a) and (b), or in defense of any claim, issue or matter therein, he shall be indemnified against expenses (including attorneys' fees) actually and reasonably incurred by him in connection therewith.

After McLean was indicted and had entered his not guilty plea, International Harvester's counsel advised McLean that the company's board of directors had decided to continue paying for his legal fees. International Harvester asked McLean to sign an additional undertaking to permit the company to advance his fees and expenses. The company made an offer to McLean whereby McLean would be provided with an attorney, paid for by International Harvester, subject to McLean's agreement that he would pay International Harvester back should he be found guilty of the criminal charges. McLean rejected this offer. He delivered a letter on January 3, 1983, refusing to sign the undertaking from International Harvester. McLean subsequently discharged the attorney hired by International Harvester because he objected to International Harvester's guilty plea, which McLean perceived as a tactic designed to make him absorb the brunt of the government's prosecution. McLean felt he had been "sold out" by International Harvester and he believed his defense strategy would be compromised if his legal expenses were paid for by International Harvester.

McLean filed papers in the district court two days later confirming that he had decided to reject advance fees from International Harvester. McLean advised the trial court that he was unwilling to be represented by counsel whose fees were being paid for by International Harvester: "There is absolutely no way I could expect an adequate defense by lawyers beholden to International Harvester and their lawyers." McLean wanted his legal fees guaranteed by Harvester or, in the alternative, wanted the court to appoint counsel because McLean could not afford an attorney.

In a March, 1985 filing with the district court, McLean again stated that he had renounced payment of his legal fees by International Harvester for the same reason. In April of 1983, McLean's request for appointment of counsel was denied. He proceeded without counsel until shortly before his trial. McLean was represented by counsel at trial and was acquitted of the criminal charges. McLean now requests indemnification of $158,815.91 in legal fees and expenses incurred by him commencing in February, 1985 and continuing throughout the trial. International Harvester says that McLean has waived any right to repayment because he refused the attorney the company offered him before trial. We find this position untenable.

In *Merritt-Chapman & Scott Corp. v. Wolfson*, 321 A.2d 138 (Del.Sup.1974), the Delaware court reviewed the status of indemnification in Delaware. The legislation was designed to "promote the desirable end that corporate officials will resist what they consider unjustified suits and claims, secure in the knowledge that their reasonable expenses will be borne by the corporation they have served if they are vindicated." *Id.* at 141 (citations omitted). In its analysis of the mandatory nature of § 145(c), the court in *Green*, 492 A.2d at 265, reviewed the section's legislative history and stated:

> The following quotation from the review of the 1967 Delaware General Corporation law shows the objective of § 145(c):
>
>> In addition to defining the area in which a corporation is permitted to grant indemnity, the new statute adds a provision granting an *absolute right of indemnity* to any director, officer, employee or agent of the corporation who has been successful, on the merits or otherwise, in a defense of any proceeding, or any claim, issue or matter therein. Such person is entitled to recover his expenses, including attorneys fees, actually and reasonably incurred by him in connection with that portion of his defense which was successful.
>
> *Id.* at 265 (emphasis added).

There is a very important difference between a corporation's discretion to advance fees prior to trial and being statutorily entitled to fees after acquittal on criminal charges. Section 145(a) empowered International Harvester with the discretion to offer reimbursement of McLean's legal expenses incurred by him in defense of the criminal charges brought by the government. The offer to advance fees and expenses was a discretionary decision by International Harvester subject to the ongo-

ing review of the Board of Directors. Based on the terms of the undertaking offered by the company, if International Harvester determined that there was a conflict of interest with McLean, it could discontinue its payment of advance funds for McLean's defense expenses and demand repayment of money previously advanced according to the terms of the agreement signed by McLean. If International Harvester paid for counsel for McLean, McLean could have honestly believed that International Harvester could have exerted some control over counsel, and also that counsel may have had a conflict of interest in maintaining the representation throughout the trial. For instance, the company's admonition to keep legal expenses to "the absolute minimum" could have justifiably been interpreted by McLean as an indication that Harvester was going to maintain control over the presentation of his defense even though the company had already pled guilty.

■ McLean clearly had interests he perceived as adverse to International Harvester. Indeed, the gravamen of the civil complaint here today is that International Harvester did as much as possible to make McLean the scapegoat for the company's alleged law breaking. McLean did not accept the company's conditional offer of indemnification for attorneys' fees because he did not think it was in his best interest to do so at that time. More importantly, he was not compelled to do so under Delaware law. McLean was simply unwilling to agree to indemnification in advance on the terms demanded by the company's board of directors. McLean wanted his legal fees guaranteed whether or not he was acquitted. This is something International Harvester would not and could not do under Delaware law. If anything, McLean simply asked for more than he was entitled to *before trial*. Section 145(a) permits a corporation to make discretionary payments to former or current employees, officers or directors should the corporation so desire. This discretion on the part of the corporation does not alter what the former employee is entitled to *after trial* under § 145(c) if he is successful in defending himself. McLean simply distrusted International Har-

vester and its lawyers. Nothing McLean did or said supports the contention that McLean renounced his statutory right of indemnification from International Harvester once he was acquitted.

International Harvester's argument that McLean has somehow waived indemnification is simply not credible. The right to indemnification under § 145(c) is mandatory and did not vest until McLean was acquitted. McLean never had a right to waive under § 145(c) until he was acquitted of the criminal charges. Only a conscious decision to reject a known right operates as a waiver. "Waiver is the intentional relinquishment of a known right or intentional conduct inconsistent with claiming it." *Wells Fargo Business v. Ben Kozloff, Inc.*, 695 F.2d 940, 947 (5th Cir.1983), *cert. denied*, 464 U.S. 818, 104 S.Ct. 77, 78 L.Ed.2d 89 (1984) (citing Texas cases). The company cannot maintain that McLean prospectively waived his statutory right of indemnification when the record clearly reflects his attempt to assure indemnification. Indeed, Judge Cire indicated, on April 4, 1983, that he believed McLean's clear intention was "to select your own lawyer and make International Harvester pay for it."

Although summary judgment was entered on behalf of International Harvester, our review of the record shows that it is McLean who was entitled to summary judgment because he has not waived the statutory entitlement to reimbursement of attorneys' fees incurred while successfully defending himself for actions taken while employed by the corporation.

### The Remaining Claims

Finally, McLean argues that the trial judge abused his discretion in limiting the discovery period, staying certain depositions, refusing to compel production of certain documents, and refusing to allow McLean to file a Fourth Amended Complaint. A review of the proceedings patently reinforces our decision to affirm on this point. McLean filed his original complaint on October 22, 1984. The defendants moved to dismiss it under Rule 12(b)(6). On January 10, 1985, McLean filed his First Amended Complaint. The defendants again moved to dismiss. McLean responded with re-

quests for document production and depositions. On the defendants' motion, the district court stayed discovery pending resolution of the motion to dismiss. On July 16, 1985, McLean filed his Second Amended Complaint. The district court opened discovery and continued the defendants' motion to dismiss for approximately six months. In the interim, McLean filed his Third Amended Complaint. During this time, the defendants produced various documents and McLean deposed six persons. The defendants also moved to dismiss the Third Amended Complaint. McLean responded to this motion by noticing seven more depositions. The district court stayed these deposition requests pending his ruling on the motion to dismiss. On January 13, 1986, the district court granted the motion to dismiss all claims save the indemnification action, denied as moot the deposition requests, and denied McLean's request to file a Fourth Amended Complaint.

We first note that as a fundamental rule in our jurisdiction, a district court possesses broad discretion in its supervision of discovery and its decision whether to permit amended complaints. *Harris v. Amoco Prod. Co.,* 768 F.2d 669, 684 (5th Cir.1985) (discovery), *cert. denied,* — U.S. —, 106 S.Ct. 1186, 89 L.Ed.2d 302 (1986); *Chitimacha Tribe v. Harry L. Laws Co.,* 690 F.2d 1157, 1163 (5th Cir. 1982) (filing amended complaints), *cert. denied,* 464 U.S. 814, 104 S.Ct. 69, 78 L.Ed.2d 83 (1983). Given the unduly burdensome and "eleventh hour" tactics of McLean's discovery requests, our study reveals that Judge Bue did not abuse his discretion in these matters. In fact, the record shows that the judge consistently attempted to safeguard McLean's interests and, at the same time, move the litigation along so as to prevent this case from delaying his docket. Judge Bue also properly exercised his broad discretion in denying McLean leave to file a Fourth Amended Complaint. Given McLean's previous unsuccessful attempts to correct pleading deficiences and his apparent lack of diligence in filing the final motion for leave to amend, the judge properly denied McLean leave to file a Fourth Amended Complaint.

### III

In conclusion, we AFFIRM the district court's orders dismissing with prejudice Counts One through Five and Seven of the Third Amended Complaint for failure to state a claim upon which relief can be granted, limiting discovery, and denying as moot McLean's motion to file a Fourth Amended Complaint. We REVERSE the district court's order granting International Harvester summary judgment on Count Six of the Third Amended Complaint, and hold that International Harvester must reimburse McLean for his necessary legal expenses in the criminal proceedings against him as provided under the Delaware statute.

### On Petition for Rehearing
PER CURIAM:

The petition for rehearing is DENIED. We see no reason to reconsider our decision that McLean's complaint failed to state a cause of action for scapegoating under the Eckhardt Amendment to the Foreign Corrupt Practices Act. Maj. op. at 1219. We do note that the arguments McLean raises as to his right to full indemnification under the Delaware statute can be made to the district court when it determines the amount of "expenses (including attorneys' fees) actually and reasonably incurred by" McLean to which he is entitled. Maj. op. at 1221 n.10 (quoting Delaware statute).