**James J. LARKIN, Plaintiff,**

v.

**TOWN OF WEST HARTFORD, and, both individually and in their official capacities, Barry Feldman, Michael Parker, James Francis, Joseph Fioretti, Laurie Murray, and Patricia Gray, Defendants.**

**Civ. No. 3:93CV01218 (PCD).**

United States District Court,
D. Connecticut.

June 20, 1995.

---

James S. Brewer, West Hartford, CT, for James J. Larkin.

Marjorie S. Wilder, Town Of West Hartford, West Hartford, CT, for Town of West Hartford.

David T. Ryan, Alicia B. Davenport, Robinson & Cole, Hartford, CT, for Barry Feldman, Michael Parker, James Francis, Joseph Fioretti, Laurie Murray, Patricia Gray.

### MEMORANDUM AND RULING ON DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

DORSEY, Chief Judge.

Plaintiff alleges defendants violated his rights to free speech, procedural due process, and various entitlements under federal and state law. Defendants' Motion for Summary Judgment is granted as to plaintiff's claims under 42 U.S.C. §§ 1983 and 1985. Plaintiff's state claims are dismissed without prejudice.

## I. BACKGROUND

In 1988, the Town of West Hartford established a Fire Apparatus Selection Committee. The Selection Committee arranged an October 1989 purchase of fire equipment for six million dollars.

Plaintiff, a West Hartford fire lieutenant until December 1992, criticized the Selection Committee's work as unethical beginning on or around July 1992. At approximately the same time, plaintiff also criticized the job performance of another firefighter, Patricia Gray.

The individual defendants, employees of the Town, participated in two separate, 1992 investigations of plaintiff for sexual harassment of Gray. Plaintiff alleges defendants' actions violated his rights under federal and state law.

## II. DISCUSSION

### A. Standard for Summary Judgment

■ Summary judgment is proper if the evidence shows "that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(c). Summary judgment must be entered "against a party who fails ... to establish the existence of an element essential to [its] case, and on which [it] will bear the burden of proof at trial." Celotex Corp. v. Catrett, 477 U.S. 317, 322, 106 S.Ct. 2548, 2552, 91 L.Ed.2d 265 (1986).

■ In deciding whether there is a genuine issue of material fact, the court must draw all reasonable inferences in favor of the nonmoving party. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 255, 106 S.Ct. 2505, 2513, 91 L.Ed.2d 202 (1986). Not every factual dispute will defeat a motion for summary judgment; a factual issue must be both "genuine" and "material." Id. at 247–48, 106 S.Ct. at 2509–10 (emphasis omitted). A factual issue is not "genuine" unless "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." Id. at 248, 106 S.Ct. at 2510. A factual issue is not "material" unless it "might affect the

outcome of the suit under the governing law." *Id.*

### B. *42 U.S.C. § 1983*

Section 1983 creates a cause of action against any person who, acting under color of state law, abridges rights created by the Constitution and laws of the United States. *See* 42 U.S.C. § 1983 (1988); *see also Chapman v. Houston Welfare Rights Org.,* 441 U.S. 600, 617–18, 99 S.Ct. 1905, 1915–16, 60 L.Ed.2d 508 (1979). Plaintiff alleges that defendants violated his rights under the First and Fourteenth Amendments to the United States Constitution. (*See* Compl., First Count, ¶ 40.) As plaintiff has not shown that defendants caused him to be deprived of any right secured by the Constitution and laws of the United States, his section 1983 claims fail. *See Annunziato v. The Gan, Inc.,* 744 F.2d 244, 250 (2d Cir.1984) ("In order to state a claim under § 1983 the plaintiffs must show that the defendants ... caused them to be deprived of a right secured by the Constitution and laws of the United States.").

#### 1. *First Amendment*

Plaintiff alleges that his First Amendment were violated in two respects. His claims of retaliation and "chill" will be discussed in turn.

##### a. *Retaliation*

■ *Introduction.* Plaintiff claims defendants investigated him for sexual harassment in retaliation for his criticism of the fire equipment purchases, (Compl., First Count, ¶ 27.), and firefighter Gray, (Pl.'s Obj. to Defs.' Mot. for Summ.J. at 17 n. 8). A public employer may not retaliate against an employee for speech protected by the First Amendment. *Perry v. Sindermann,* 408 U.S. 593, 597, 92 S.Ct. 2694, 2697, 33 L.Ed.2d 570 (1972); *Ezekwo v. N.Y. City Health & Hosps. Corp.,* 940 F.2d 775, 780 (2d Cir.1991), *cert. denied,* 502 U.S. 1013, 112 S.Ct. 657, 116 L.Ed.2d 749 (1991). Plaintiff's speech, however, was not so protected.

■ A public employee's speech is protected by the First Amendment only if two conditions are satisfied:

[T]he speech must be on a matter of public concern, and the employee's interest in expressi[on] ... on this matter must not be outweighed by any injury the speech could cause to " 'the interest of the State, as an employer, in promoting the efficiency of the public services it performs through its employees.' "

*Waters v. Churchill,* — U.S. —, —, 114 S.Ct. 1878, 1884, 128 L.Ed.2d 686 (1994) (citations omitted). *See also Connick v. Myers,* 461 U.S. 138, 146, 103 S.Ct. 1684, 1690, 75 L.Ed.2d 708 (1983) ("When employee expression cannot be fairly considered as relating to any matter of ... concern to the community, government officials should enjoy wide latitude in managing their offices, without intrusive oversight by the judiciary in the name of the First Amendment.").

Regardless of whether plaintiff's comments on the purchases and Gray addressed matters of public concern, they were not protected by the First Amendment. This is so because plaintiff's interest in expression was outweighed by the Town's interest in efficient public service. *See Waters,* — U.S. at —, 114 S.Ct. at 1884. In other words, plaintiff's speech fails the *Pickering* balancing test. *See Pickering v. Bd. of Educ.,* 391 U.S. 563, 568, 88 S.Ct. 1731, 1734, 20 L.Ed.2d 811 (1968) ("The problem ... is to arrive at a balance between the interests of the [employee], as a citizen, in commenting upon matters of public concern and the interest of the State, as an employer, in promoting the efficiency of the public services it performs through its employees.").

■ *The Pickering balancing test.* Public employers have an interest in sanctioning employee speech that undermines government's efficient operation. *Waters,* — U.S. at —, 114 S.Ct. at 1887–88. This interest stems from government's "mission as employer," *id.,* — U.S. at —, 114 S.Ct. at 1887:

Government agencies are charged by law with doing particular tasks. Agencies hire employees to help do those tasks as effectively and efficiently as possible. When [an employee] begins to do or say things that detract from the agency's effective

operation, the government employer must have some power to restrain [him].

*Id.,* —— U.S. at ——, 114 S.Ct. at 1887–88.

■ The need for efficient public service means that "the government as employer . . . has far broader powers [over speech] than does the government as sovereign." *Id.,* —— U.S. at ——, 114 S.Ct. at 1886. Outside government workplaces, "[t]he First Amendment demands a tolerance of 'verbal tumult, discord, and even offensive utterance,' as 'necessary side effects of the process of open debate. . . .' " *Id.* (citation omitted). Within government workplaces, the First Amendment demands no such tolerance:

> The government cannot restrict the speech of the public at large just in the name of efficiency. But where the government is employing someone for the very purpose of effectively achieving its goals, such restrictions may well be appropriate.

*Id.,* —— U.S. at ——, 114 S.Ct. at 1888.

■ Such restrictions are appropriate if the employee's interest in expression is outweighed by government's interest in efficient public service. *See id.,* —— U.S. at ——, 114 S.Ct. at 1884. In balancing these interests, a court must consider "the manner, time, and place of the employee's expression." *Rankin v. McPherson,* 483 U.S. 378, 388, 107 S.Ct. 2891, 2899, 97 L.Ed.2d 315 (1987). It is relevant

> whether the statement impairs discipline by supervisors or harmony among co-workers, has a detrimental impact on close working relationships for which personal loyalty and confidence are necessary, or impedes the performance of the speaker's duties or interferes with the regular operation of the enterprise.

*Id.* "[C]ourts [must] look to the facts as the employer reasonably found them to be." *Waters,* —— U.S. at ——, 114 S.Ct. at 1889.

*Plaintiff's criticism of firefighter Gray.* Plaintiff criticized Gray's performance as a firefighter. (*See, e.g.,* Fioretti Dep. (Oct. 13, 1993) at 27.) He claimed that Gray abandoned him at a fire, (*see, e.g., id.* at 21.), and lacked the strength to open a hose nozzle, (*see, e.g.,* Larkin Dep. (July 13, 1993) at 140.). Plaintiff never filed a written complaint re-

garding Gray's alleged shortcomings (*see id.* at 17; Fioretti Dep. (Oct. 13, 1993) at 27.), but he communicated his accusations against Gray to other firefighters, (*see, e.g., id.* at 69.).

Plaintiff's criticisms undermined firefighters' confidence in Gray's abilities. (*See* Mem. from Murray to File (Jan. 8, 1993) at 5 ("[Gray] added that the stories about her have affected other people's perception of her credibility on the job.").) Gray experienced "dismay over the fact that some of her co-workers were starting to believe Lieutenant Larkin's stories." (*Id.* at 3.) Their skepticism about her abilities created "awkwardness" as some of them were reluctant to rely on her at fires. (*Id.* at 5.) "[S]ome members ignore[d] her when they work[ed] together; others joke[d] about Lieutenant Larkin's stories." (*Id.*) (*See also* Mem. from Feldman to Francis (Jan. 28, 1993) at 1 ("Gray has experienced a hostile work environment which could adversely affect her ability to do her job."); Fioretti Dep. (Oct. 13, 1993) at 13 ("[Gray] said that . . . other firefighters came to her saying that Lieutenant Larkin has said that she could not perform her job duties. . . .").)

■ Plaintiff's attacks on Gray had "a detrimental impact on close working relationships for which personal loyalty and confidence are necessary." *Rankin,* 483 U.S. at 388, 107 S.Ct. at 2899. His gossiping tested Gray's patience with her co-workers and undermined other firefighters' confidence in her when they might have to depend on her in an emergency. The Town's interest in fostering "harmony among co-workers," *id.,* clearly outweighed plaintiff's interest in spreading rumors. Thus, his criticism of Gray was not protected speech.

■ *Plaintiff's criticism of the fire equipment purchases.* Plaintiff implied that the Fire Apparatus Selection Committee acted unethically. (*See* Larkin Aff. ¶ 3; *see also* Pl.'s St. of Mat. Facts ¶ 4.) These charges could have undermined his co-workers' faith in the probity of their superiors who served on the committee and purchased the equip-

ment on which the workers' lives depended.* *See Rankin,* 483 U.S. at 388, 107 S.Ct. at 2899 ("detrimental impact on close working relationships for which personal loyalty and confidence are necessary").

To avoid a crisis of confidence, defendants had a valid interest in investigating plaintiff's charges. If the charges were corroborated, defendants could have corrected the abuses that were brought to light. If the charges were discredited, defendants could have publicized that fact. In either event, defendants could have averted any concerns among firefighters.

Plaintiff made it difficult, if not impossible, for defendants to put his charges to rest. He never submitted a written complaint to Town officials about the fire equipment purchases. (*See* Larkin Dep. (July 9, 1993) at 87; Pl.'s Answers to Defs.' Regs. for Admiss. (Oct. 18, 1993) ¶¶ 10, 11, 12, 16, 50.) He never complained about the purchases at a Town Council meeting or to the Town Council as a whole. (*See* Larkin Dep. (July 9,

1993) at 244; Pl.'s Answers to Defs.' Reqs. for Admiss. (Oct. 18, 1993) ¶ 50.) His attorney refused the Town counsel's request for information substantiating his criticisms. (*See* Letter from Wilder to Brewer (May 12, 1993) at 1–2; Letter from Brewer to Wilder (May 24, 1993) at 2; *see also* Wilder Aff. ¶¶ 9, 10.) Although his attorney set forth facts supporting his conflict of interest charge, (*see* Letter from Brewer to Wilder (Jan. 28, 1993) at 1.), neither he nor his attorney ever stated any basis for his charge of bid-rigging. (*See* Wilder Aff. ¶¶ 5–8.) Finally, he and others recalled that, in casual conversations, his criticisms often involved "generalities," (Larkin Dep. (July 9, 1993) at 94.), and lacked "specifics," (Mckernan Dep. at 9.). (*See also* Larkin Dep. (July 9, 1993) at 93) (Plaintiff discussed the bid specifications "[v]aguely."); Mckernan Dep. at 10 (Plaintiff "didn't mention anything more as far as [Town Councilwoman Madeline Mckernan could] recall [other] than just saying there is trouble in the fire department.").

* There is no evidence that plaintiff's speech actually did undermine firefighters' confidence in their superiors and equipment. Yet employee speech need not actually result in "the destruction of working relationships" to be unprotected by the First Amendment. *Connick,* 461 U.S. at 152 [103 S.Ct. at 1692]. "The danger in [an employee's speech may be] speculative." *Waters,* —— U.S. at ——, 114 S.Ct. at 1887. There is no need "for an employer to allow events to unfold to the extent that the disruption of the office ... is manifest before taking action." *Connick,* 461 U.S. at 152, [103 S.Ct. at 1692].

The Supreme Court has cautioned that "a stronger showing may be necessary" when employee speech involves certain matters of public concern. *Id.* "In many such situations the government may have to make a substantial showing that the speech is, in fact, *likely to be disruptive* before it may be punished." *Waters,* [—— U.S. at ——], 114 S.Ct. at 1887 (emphasis added). The Court seems to contemplate a showing that disruption is not merely possible, but probable. By using the words "may be necessary," *Connick,* 461 U.S. at 152 [103 S.Ct. at 1692] and "may have to make," *Waters,* [—— U.S. at ——], 114 S.Ct. at 1887, the Court seems undecided whether a stronger showing is in fact required. The Court also seems undecided in what instances such a requirement might apply. In one case, the Court said that a stronger showing might have been necessary "if the employee's speech more substantially involved matters of public concern." *Connick,* 461 U.S. at 152, [103 S.Ct.

at 1692]. The Court did not specify, however, how much "more substantially," *id.,* the employee's speech would have had to involve matters of public concern. In another case, the Court said a stronger showing may be necessary "[i]n many [not all] such situations." *Waters,* [—— U.S. at ——], 114 S.Ct. at 1887.

A stronger showing may not be required here. A rationale for such a showing is the following: "Government employees are often in the best position to know what ails the agencies for which they work; public debate may gain much from their informed opinions." *Id.* The views expressed by plaintiff may not have been unusually informed by his status as a firefighter. For example, he claims to have accused the Fire Apparatus Selection Committee of bid-rigging, (Compl., First Count, ¶ 10.), but he admits that he never saw the bid specifications before filing this lawsuit, (Pl.'s Answers to Defs.' Reqs. for Admiss. (Oct. 18, 1993) ¶ 20.).

If, however, a stronger showing is required here, defendants have clearly made it. First, evidence has been presented that plaintiff's dissatisfaction with the purchases was known to rank-and-file firefighters. (*See* Pereslugoff Dep. at 55–56; Valintakonis Dep. at 42.) Second, evidence has been presented that plaintiff's charges had already frayed relations with persons in the fire department. (*See, e.g.,* Larkin Dep. (July 9, 1993) at 91 ("Then [Fioretti] said, 'What are you trying to do, intimidate me?' ").) Thus, the danger in plaintiff's speech was not merely "speculative," *Waters,* [—— U.S. ——,] 114 S.Ct. at 1887, but manifest.

Defendants could not deal with plaintiff's concerns because he never fully explained them. (*See* Letter from Wilder to Brewer (May 12, 1993) at 1 ("[N]o *facts* have come to the [Town] Manager's or Council's attention that can help ... investigate these serious allegations, and, if necessary, then take appropriate action.").) Plaintiff created a risk of employee disaffection and then hampered the Town's ability to avert such a crisis. Defendants correctly observe that plaintiff

> was interested, not in ... ensuring that an investigation of his allegations took place, but in espousing his ... opinions, with no regard ... for the effect that his actions might have on the Town of West Hartford's interest in achieving its goals as effectively and efficiently as possible.

(Defs.' Suppl. Mem. in Supp. of Mot. for Summ. J. at 6.) As plaintiff's interest in fueling firefighters' suspicions was outweighed by the Town's interest in dampening them, his attack on the purchases was not protected speech.

*Conclusion.* Whether or not plaintiff's speech was a "substantial" or "motivating" factor for the sexual harassment investigations, *Mt. Healthy City Sch. Dist. Bd. of Educ. v. Doyle*, 429 U.S. 274, 287, 97 S.Ct. 568, 576, 50 L.Ed.2d 471 (1977), is immaterial. Even if the investigations were in retaliation for plaintiff's speech, they did not violate the Constitution: plaintiff's criticisms of Gray and the purchases were not protected by the First Amendment.

#### b. *"Chill"*

Plaintiff alleges defendants "used [the sexual harassment investigations] to ... intimidate [him] from speaking on matters of public concern," (Compl., First Count, ¶ 35.), and "abridged [his] right to free speech," (*id.* at ¶ 40.). This allegation of a "chill" is without merit.

Government action that does not prohibit protected speech can violate the Constitution by deterring, or "chilling," the exercise of First Amendment rights. *Laird v. Tatum*, 408 U.S. 1, 11, 92 S.Ct. 2318, 2324, 33 L.Ed.2d 154 (1972). A "chill" claim re-

quires more than "[a]llegations of a subjective 'chill'." *Id.* at 13, 92 S.Ct. at 2325–26. "[T]he litigant [must] demonstrate 'a ... specific present objective harm or a threat of specific future harm.'" *Meese v. Keene*, 481 U.S. 465, 472, 107 S.Ct. 1862, 1866, 95 L.Ed.2d 415 (1987) (*quoting Laird*, 408 U.S. at 14, 92 S.Ct. at 2326). Absent such harm, no justiciable case or controversy exists. *Laird*, 408 U.S. at 14, 92 S.Ct. at 2326 (" '[T]he federal courts established pursuant to Article III of the Constitution do not render advisory opinions.' ") (citation omitted). A plaintiff who does not show he or she has been or will be deterred from speaking alleges a harm too remote to satisfy the "injury in fact" requirement of standing. *Cf.* Laurence H. Tribe, *American Constitutional Law* 122 (2d ed. 1988) (In *Laird*, "the Court noted the respondents' apparent concession that they were not *themselves* 'chilled.' This concession, if accepted, would ... not [indicate] that anyone before the Court had been 'injured in fact'...."). *See also Laird*, 408 U.S. at 14 n. 7, 92 S.Ct. at 2326 n. 7 (Persons who are not actually chilled from speaking "lack that 'personal stake in the outcome of the controversy' essential to standing.") (citation omitted).

Plaintiff has not demonstrated a "specific present objective harm or a threat of specific future harm." *Id.* at 14, 92 S.Ct. at 2326. There is no evidence that plaintiff has been or will be deterred from speaking on matters of public concern. In fact, the evidence is to the contrary. The following exchanges are illustrative:

> ATTORNEY WILDER: I'm asking you, do you feel intimidated?
>
> PLAINTIFF: No. Not from the get go. By no one.

(Larkin Dep. (July 9, 1993) at 176.)

> ATTORNEY WILDER: ... [W]hat is that the defendants have done that have [*sic*] caused you not to be able to speak out on issues relating to the fire equipment? You're still doing that aren't you?

PLAINTIFF: And always will. I think it was an attempt. But it didn't work, did it?

(*Id.* at 248.)

ATTORNEY WILDER: You have alleged that somehow your rights to free speech have been violated. What have you been prevented from saying?

PLAINTIFF: They attempted to prevent me from saying.

ATTORNEY WILDER: What did they attempt?

PLAINTIFF: ... It was an attempt to shut me up. And it didn't, won't, and will not.

*Id.* at 253–54. *See also id.* at 177 (During the second sexual harassment investigation, plaintiff spoke to a *Hartford Courant* reporter regarding his concerns about the fire equipment purchases.) Any infringement of plaintiff's First Amendment rights is too "speculative," *Spear v. Town of West Hartford,* 954 F.2d 63, 67 (2d Cir.1992), *cert. denied,* —— U.S. ——, 113 S.Ct. 66, 121 L.Ed.2d 33 (1992), to confer standing. Therefore, defendants are entitled to summary judgment on plaintiff's "chill" claim.

### 2. *Fourteenth Amendment*

Plaintiff alleges defendants violated his Fourteenth Amendment right to procedural due process. (*See* Compl., First Count, ¶ 40; *see also* Pl.'s Obj. to Defs.' Mot. for Summ. J. at 25.) This allegation is without merit.

■ Procedural due process is required only when there is a *deprivation* of a liberty or property interest protected by the Fourteenth Amendment. *Bd. of Regents v. Roth,* 408 U.S. 564, 569, 92 S.Ct. 2701, 2705, 33 L.Ed.2d 548 (1972). Plaintiff's claim of deprivation rests on the assertion that he was "constructively discharged" from employment. (Pl.'s Obj. to Defs.' Mot. for Summ. J. at 23 (property interest), 24 (liberty interest).)

Plaintiff indicates that, although he retired and was not *actually* discharged, (*see* Larkin Dep. (July 9, 1993) at 6, 9), he left his job involuntarily, (*see* Larkin Aff. ¶ 5; Larkin Dep. (July 9, 1993) at 243.). He has stated that he "was forced to retire ... [because] of two unsubstantiated sexual harassment complaints [and investigations]." (Larkin Aff. ¶ 5.)

Courts have typically addressed actual, not constructive, deprivations of protected interests. *See, e.g., Goss v. Lopez,* 419 U.S. 565, 574–75, 95 S.Ct. 729, 736–37, 42 L.Ed.2d 725 (1975) (suspension of student's right to attend school). Nevertheless, courts have recognized that Fourteenth Amendment deprivations can be constructive as well as actual. *See, e.g., Reed v. Village of Shorewood,* 704 F.2d 943, 949 (7th Cir.1983) (Defendants might have deprived plaintiffs of property right in liquor license through harassment that forced plaintiffs to surrender the license, even though defendants never actually revoked it.).

■ In due process cases, employment law has provided guidance on constructive discharge. *See, e.g., Venero v. City of Tampa,* 830 F.Supp. 1457, 1459–60 (M.D.Fla. 1993), *aff'd,* 40 F.3d 389 (11th Cir.1994). Under such law,

"[a] constructive discharge occurs when the employer, rather than acting directly, 'deliberately makes an employee's working conditions so intolerable that the employee is forced into an involuntary resignation.'" To find that an employee's resignation amounted to a constructive discharge, "'the trier of fact must be satisfied that the ... working conditions would have been so difficult or unpleasant that a reasonable person in the employee's shoes would have felt compelled to resign.'"

*Lopez v. S.B. Thomas, Inc.,* 831 F.2d 1184, 1188 (2d Cir.1987) (citations omitted); *see also Seery v. Yale–New Haven Hosp.,* 554 A.2d 757, 761 (1989) (same).

■ The evidence is not sufficient to permit a trier of fact to conclude "that a reasonable person in [plaintiff]'s shoes would have felt compelled to resign." *Lopez,* 831 F.2d at 1188; *see also Seery,* 554 A.2d at 761. "[A] reasonable employee will usually explore ... alternative avenues thoroughly before coming to the conclusion that resignation is the only option." *Clowes v. Allegheny Valley Hosp.,* 61 Fair Empl.Prac.Cases (BNA) 908, 910 (3d Cir.1993) (*citing Bozé v. Branstetter,*

912 F.2d 801, 805 (5th Cir.1990); *Garner v. Wal–Mart Stores, Inc.,* 807 F.2d 1536, 1539 (11th Cir.1987)). Alternatives include filing a grievance or threatening to quit if changes are not made. *Clowes,* 61 Fair Empl. Prac.Cases at 910. Plaintiff did not pursue alternatives short of resignation, which might have indicated that retirement was not his only option. (*See, e.g.,* Larkin Dep. (July 9, 1993) at 255–56 (Plaintiff chose not to file grievances regarding the sexual harassment investigations.).)

■ Without a colorable allegation of constructive discharge, plaintiff's Fourteenth Amendment claim fails. Although plaintiff suggests the sexual harassment charges impugned his reputation, (*see, e.g.,* Pl.'s Obj. to Defs.' Mot. for Summ. J. at 24.), "reputation alone, apart from some more tangible interests such as employment," is not protected by procedural due process. *Paul v. Davis,* 424 U.S. 693, 701, 96 S.Ct. 1155, 1160, 47 L.Ed.2d 405 (1976). *Cf. Wisconsin v. Constantineau,* 400 U.S. 433, 437, 91 S.Ct. 507, 510, 27 L.Ed.2d 515 (1971) ("Where a person's good name, reputation, honor, or integrity is at stake because of what the government is doing to him, notice and an opportunity to be heard are essential."); *Paul,* 424 U.S. at 709, 96 S.Ct. at 1164 (In *Constantineau,* "we d[id] not think that ... defamation, standing alone, deprived [respondent] of any 'liberty' protected by the ... Fourteenth Amendment."). The sexual harassment charges and investigations may or may not have reduced plaintiff's attractiveness to other employers, but they did not effect "any change of [his] status as theretofore recognized under the State's laws." *Paul,* 424 U.S. at 712, 96 S.Ct. at 1166. *See also Siegert v. Gilley,* 500 U.S. 226, 233–34, 111 S.Ct. 1789, 1794, 114 L.Ed.2d 277 (1991) (Diminution of employment prospects caused by reputational injury was not actionable under Fourteenth Amendment when doctor voluntarily resigned from hospital.); *Setliff v. Memorial Hosp. of Sheridan County,* 850 F.2d 1384, 1396–97 (10th Cir.1988) (Employee was not deprived of liberty interest by investigation of alleged misconduct, absent some change in his employment status.). Thus, defendants are entitled to summary judgment on plaintiff's due process claim.

### 3. Qualified Immunity

■ The individual defendants assert qualified immunity as a defense to plaintiff's constitutional claims. (*See* Am. Answer of Barry Feldman, Michael Parker, James Francis, Joseph Fioretti, Laurie Murray and Patricia Gray to Pl.'s Compl. at 5 ("Third Special Defense"); Mem. of L. in Supp. of Defs.' Mot. for Summ. J. at 23–24.) Government officials performing discretionary functions possess qualified immunity to suits under section 1983. *See Mitchell v. Forsyth,* 472 U.S. 511, 526, 105 S.Ct. 2806, 2815, 86 L.Ed.2d 411 (1985); *Harlow v. Fitzgerald,* 457 U.S. 800, 818, 102 S.Ct. 2727, 2738, 73 L.Ed.2d 396 (1982); *Wood v. Strickland,* 420 U.S. 308, 322, 95 S.Ct. 992, 1001, 43 L.Ed.2d 214 (1975), *overruled in part by Harlow, supra.*

■ Consideration of defendants' qualified immunity defense is unnecessary. The defense is moot, as plaintiff has not shown that defendants deprived him of any constitutional right. *See Martinez v. Cal.,* 444 U.S. 277, 284, 100 S.Ct. 553, 558, 62 L.Ed.2d 481 (1980) (Because appellants failed to show any deprivation of rights secured by section 1983, "it is not necessary for us to decide any question concerning ... immunity....").

### 4. Policy or Custom

■ Plaintiff alleges that the defendant Town of West Hartford adopted a "custom ... of violating [his] Constitutional Rights to Free Speech and Due Process." (Compl., Second Count, ¶ 47.) A municipality may be held liable under section 1983 only for injury inflicted by its "policy or custom." *Monell v. Dep't of Social Servs.,* 436 U.S. 658, 694, 98 S.Ct. 2018, 2037, 56 L.Ed.2d 611 (1978).

■ A municipality may not be held liable under section 1983, however, without a showing of "a denial of a constitutional right." *Batista v. Rodriguez,* 702 F.2d 393, 397 (2d Cir.1983). As plaintiff has not made such a showing, the Town is entitled to summary judgment as to plaintiff's claim of a policy or custom.

C. *42 U.S.C. § 1985*

Plaintiff bases a cause of action on 42 U.S.C. § 1985. (*See* Compl., First Count, ¶ 40.) He does not specify which of section 1985's three subsections he relies on, but presumably it is the third. *See* 42 U.S.C. § 1985(3) (1988); (*see also* Compl., First Count, ¶ 27.). That subsection permits recovery of damages from persons who have conspired to deprive an individual of equal protection of the law. 42 U.S.C. § 1985(3) (1988).

▮ Section 1985(3) requires "some racial, or perhaps otherwise class-based, invidiously discriminatory animus behind the conspirators' action." *Griffin v. Breckenridge*, 403 U.S. 88, 102, 91 S.Ct. 1790, 1798, 29 L.Ed.2d 338 (1971). There is no evidence that the alleged conspiracy against plaintiff was motivated by racial animus. In fact, plaintiff has only alleged a conspiracy inspired by "his views concerning fire apparatus purchases" and "[his alleged] 'sexual harassment.'" (Compl., First Count, ¶ 27.)

The Supreme Court has indicated that section 1985(3) may apply only to racially-motivated conspiracies. "[I]t is a close question whether § 1985(3) was intended to reach any class-based animus other than animus against Negroes and those who championed their cause." *United Bhd. of Carpenters & Joiners v. Scott*, 463 U.S. 825, 836, 103 S.Ct. 3352, 3360, 77 L.Ed.2d 1049 (1983). *See also Bray v. Alexandria Women's Health Clinic*, —— U.S. ——, —— – ——, 113 S.Ct. 753, 759–61, 122 L.Ed.2d 34 (1993) (Women seeking abortion are not a class for purposes of section 1985(3).). The Supreme Court has similarly cautioned against expanding section 1985(3) into "a general federal tort law." *Griffin*, 403 U.S. at 102, 91 S.Ct. at 1798. *See also Bray*, —— U.S. at ——, 113 S.Ct. at 759, 122 L.Ed.2d 34 ("[T]he term ['class'] . . . connotes . . . more than . . . individuals who . . . desire to engage in conduct that . . . defendant disfavors . . . Otherwise . . . [section 1985(3) ] . . . would [be] convert[ed] . . . into the 'general federal tort law' it was the very purpose of the animus requirement to avoid.") (citation omitted).

▮ The Supreme Court's concerns require lower courts to "exercise . . . restraint when . . . confronted with class-based discrimination grounded in non-racial animus." *McLean v. Int'l Harvester Co.*, 817 F.2d 1214, 1219 (5th Cir.1987) (*quoting McLellan v. Miss. Power & Light Co.*, 545 F.2d 919, 929 (5th Cir.1977)). Section 1985(3) should not be applied "to every class which the artful pleader can contrive." *McLean*, 817 F.2d at 1219 (*quoting McLellan*, 545 F.2d at 928).

Plaintiff alleges discrimination based on his beliefs. (*See* Compl., First Count, ¶ 27.) Courts have held that section 1985(3) classes can be defined by beliefs—specifically, "political" beliefs. *See, e.g., Conklin v. Lovely*, 834 F.2d 543, 549 (6th Cir.1987); *Keating v. Carey*, 706 F.2d 377, 388 (2d Cir.1983).

Deciding whether plaintiff's beliefs are "political" is unnecessary. The word "beliefs" provides a clearer distinction between plaintiff's case and others under section 1985(3).

The word "beliefs," as used to describe 1985(3) classes, is somewhat of a misnomer. Most of these classes have been defined not only by belief, but also by association—membership in a political party, support for a political candidate. *See, e.g., Conklin*, 834 F.2d at 549 (support for a candidate for county prosecuting attorney); *Keating*, 706 F.2d at 388 (membership in the Republican Party).

▮ Discrimination against such classes is "invidious[ ]," *Griffin*, 403 U.S. at 102, 91 S.Ct. at 1798, not because it is motivated by their beliefs. There may be "common and respectable reasons for opposing" their beliefs. *Bray*, —— U.S. at ——, 113 S.Ct. at 759. Instead, discrimination against such classes is invidious because it is motivated by their association with other groups or individuals. Discrimination because of a person's political affiliation is as odious as discrimination because of a person's race. *Cf. Bray*, —— U.S. at ——, 113 S.Ct. at 761. Association with others is an "irrational surrogate," *id.,* —— U.S. at ——, 113 S.Ct. at 759, for beliefs which the class may or may not espouse.

■ Plaintiff has adduced no evidence that any discrimination against him was because of political associations, as opposed to political beliefs. Therefore, defendants are entitled to summary judgment on plaintiff's section 1985 claim.

#### D. State–Law Claims

■ The court's authority to hear and decide plaintiff's state-law claims rests on the concept of pendent, or supplemental, jurisdiction. (*See* Compl. ¶ 3.) *See also Parker & Parsley Petroleum Co. v. Dresser Ind.*, 972 F.2d 580, 584 n. 5 (5th Cir.1992) ("What was formerly called 'pendent jurisdiction' is now included within the term 'supplemental jurisdiction.' "). Pendent jurisdiction allows a district court to hear and decide claims that are not within its original jurisdiction:

> [I]n any civil action of which the district courts have original jurisdiction, the district courts shall have supplemental jurisdiction over all other claims that are so related to claims in the action within such original jurisdiction that they form part of the same case or controversy under Article III of the United States Constitution.

28 U.S.C. § 1367(a) (1988); *see also United Mine Workers of Am. v. Gibbs,* 383 U.S. 715, 725, 86 S.Ct. 1130, 1138, 16 L.Ed.2d 218 (1966).

■ "The exercise of pendent jurisdiction ... is within the discretion of the district court, and is 'not [the] plaintiff's right.' " *Greene v. Town of Blooming Grove,* 935 F.2d 507, 510 (2d Cir.1991) (citations omitted), *cert. denied,* 502 U.S. 1005, 112 S.Ct. 639, 116 L.Ed.2d 657 (1991). In deciding whether to exercise pendent jurisdiction, the district court must weigh "the values of judicial economy, convenience, fairness, and comity" in light of the facts of the case and the stage of the litigation. *Carnegie–Mellon Univ. v. Cohill,* 484 U.S. 343, 350, 108 S.Ct. 614, 619, 98 L.Ed.2d 720 (1988). "No single factor ... is dispositive." *Parker & Parsley Petroleum Co.,* 972 F.2d at 587.

The district court "may decline to exercise supplemental jurisdiction ... [if it] has dismissed all claims over which it has original jurisdiction." 28 U.S.C. § 1367(c) (1988). The Supreme Court once asserted that "if the federal claims are dismissed before trial ... the state claims should be dismissed as well." *Gibbs,* 383 U.S. at 726, 86 S.Ct. at 1139. More recently, however, the Court has indicated that "this statement does not establish a mandatory rule to be applied inflexibly in all cases." *Carnegie–Mellon,* 484 U.S. at 350 n. 7, 108 S.Ct. at 619 n 7. The Court noted:

> The statement simply recognizes that in the usual case in which all federal-law claims are eliminated before trial, the balance of factors to be considered under the pendent jurisdiction doctrine—judicial economy, convenience, fairness, and comity—will point toward declining to exercise jurisdiction over the remaining state-law claims.

*Id.*

■ In the instant matter, the balance of factors indicates that this is the usual case: the dismissal of all federal claims counsels against exercising pendent jurisdiction and in favor of dismissal of the state claims without prejudice. *See Carnegie–Mellon Univ.,* 484 U.S. at 350, 108 S.Ct. at 619. The values of judicial economy, convenience, fairness, and comity are examined in turn in the following paragraphs.

##### 1. Judicial Economy

■ The factor of judicial economy counsels against exercising pendent jurisdiction for three reasons. First, this court is not so familiar with this case that consideration of the state claims by a state court would be redundant. *See Parker & Parsley Petroleum Co.,* 972 F.2d at 587. A forum's familiarity with a case is indicated by the amount of judicial resources the case has consumed. *See id.* This case has not taken up a substantial amount of this court's time and attention: No hearings and only one, one-hour-and-ten-minute conference with the undersigned have been held. Also, though numerous motions have been decided, all except the present one have been resolved by margin endorsements rather than by detailed, extensive rulings.

Second, judicial economy counsels against exercising pendent jurisdiction because this

court probably cannot decide the state claims as quickly and easily as a state court can. State courts have greater familiarity with state law. *Id.* at 589. Connecticut courts can probably zero-in on the merit (or lack of merit) in plaintiff's state claims with the expenditure of fewer judicial resources than this court would require.

■ Third, judicial economy counsels against exercising pendent jurisdiction because a federal court should give precedence to claims within its original jurisdiction. *See id.* at 587 ("Nor would it serve judicial economy to reward a plaintiff by allowing it into federal court [on the basis of pendent jurisdiction] when it pleads a baseless [original jurisdiction] suit."). Going forward with a summary judgment ruling on plaintiff's state claims and then, possibly, a trial would consume a substantial amount of the court's time. The court should hesitate to devote such attention to a case that is now wholly outside its original jurisdiction. The court's limited resources are more properly spent on cases that still present claims within its original jurisdiction, some of which have been pending for an unusually long time.

### 2. *Convenience*

A decision not to exercise pendent jurisdiction will not cause "undue inconvenience," *id.,* to the parties. As the litigants have already briefed the state issues, little new legal research will be required if the claims are renewed in state court. Any additional factual research would have to be conducted even were the state claims to be considered here. *See Fin. Gen. Bankshares v. Metzger,* 680 F.2d 768, 774 (D.C.Cir.1982).

■ Another consideration is whether a backlog in state courts would inordinately delay resolution of the parties' dispute. *See Parker & Parsley Petroleum Co.,* 972 F.2d at 588. This question deserves attention especially because of the lag in resolving the present motion. *See Newport Ltd. v. Sears, Roebuck & Co.,* 941 F.2d 302, 307 (5th Cir. 1991) (Exercising pendent jurisdiction was appropriate in part because litigation had been pending for four years.), *cert. denied,* 502 U.S. 1096, 112 S.Ct. 1175, 117 L.Ed.2d 420 (1992). A federal trial on this matter, however, might very well begin no sooner than a trial in state court. This court's calendar will not permit a trial date for at least five—and probably more—months.

A state trial might, of course, be delayed if the parties were to relitigate already-decided motions under the different procedural and evidentiary rules in state court. The docket in this case does reflect that roughly thirty motions have been filed. Yet at least sixteen of these motions would probably not be re-filed in state court. They are now moot because of later events, such as the acquisition of information during discovery.

### 3. *Fairness*

■ The factor of fairness "concerns the prejudice to the parties that would arise from dismissal." *Parker & Parsley Petroleum Co.,* 972 F.2d at 588. It also counsels against exercising pendent jurisdiction.

The factor of fairness requires consideration of whether plaintiff will be precluded by statutes of limitations from renewing his claims in state court. *See id.* He will not. The statute of limitations for a supplemental claim is tolled while the claim is pending in federal court and for 30 days thereafter, unless state law provides a longer tolling period. *See* 28 U.S.C. § 1367(d) (1988); *see also Pearson v. Ford Motor Co.,* 865 F.Supp. 1504, 1515 n. 9 (N.D.Fla.1994).

The factor of fairness also requires consideration of plaintiff's health. In a recent letter, his attorney stated that he "just ... was admitted to [a hospital's] Intensive Care Unit ... with a blood clot to the brain" and would like "his day in court" before he dies. (Letter from Brewer to Dorsey (Mar. 2, 1995) at 1.) This court is naturally concerned that plaintiff's state claims, like his federal claims, be resolved before his death. There is, however, no reason to believe that a state court cannot achieve this salutary result. The attorney's letter indicates that plaintiff's condition is terminal and was acute when the letter was written three months ago. The letter does not indicate that plaintiff's death is imminent. (*See id.*)

### 4. *Comity*

The factor of comity also counsels against exercising pendent jurisdiction. At least one of plaintiff's state claims may present "complex and unsettled" issues of state law, *McCullough v. Branch Banking & Trust Co.*, 844 F.Supp. 258, 261 (E.D.N.C.1993), *aff'd*, 35 F.3d 127 (4th Cir.1994), *cert. denied*, —— U.S. ——, 115 S.Ct. 1101, 130 L.Ed.2d 1069 (1995). (*See* Mem. of L. in Supp. of Defs.' Mot. for Summ. J. at 37 (Connecticut General Statute § 31–51m "has not been extensively interpreted by the state courts.").) Federal courts should hesitate to decide novel questions of state law: they are not the authorized expositors of state law, and their errors cannot be corrected on appeal by the courts that are. Herbert Wechsler, *Federal Jurisdiction and the Revision of the Judicial Code*, 13 Law & Contemp. Prob. 216, 232 (1948) (*cited in Gibbs*, 383 U.S. at 726 n. 15, 86 S.Ct. at 1139 n. 15). *See also United Gas Pipe Line Co. v. Ideal Cement Co.*, 369 U.S. 134, 135, 82 S.Ct. 676, 677, 7 L.Ed.2d 623 (1962) (per curiam) (State court defines authoritative meaning of state law.).

Plaintiff's other state claims do not appear to present state-law issues that are either complex or unsettled. Though the factor of comity does not point strongly toward declining pendent jurisdiction over these claims, it is outweighed by other factors, discussed above, which do.

### III. *CONCLUSION*

Defendants' Motion for Summary Judgment (doc. 95) is granted as to plaintiff's claims under 42 U.S.C. §§ 1983 and 1985. Plaintiff's state claims are dismissed without prejudice. The clerk shall close the file.

SO ORDERED.