# IN THE COURT OF CHANCERY OF THE STATE OF DELAWARE

| | | |
|---|---|---|
| SHAWN EVANS, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | C.A. No. 2018-0454-LWW |
| | ) | |
| AVANDE, INC., | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |

# MEMORANDUM OPINION

Date Submitted:  June 25, 2021
Date Decided:  September 23, 2021

Sean J. Bellew, BELLEW LLC, Wilmington, Delaware; Jenny Li, BAILEY & GLASSER, LLP, Wilmington, Delaware; *Counsel for Plaintiff Shawn Evans*

Thad J. Bracegirdle, BAYARD, P.A., Wilmington, Delaware; Jerome R. Bowen, BOWEN LAW OFFICES, Las Vegas, Nevada; *Counsel for Defendant Avande, Inc.*

**WILL, Vice Chancellor**

The former CEO of Avande, Inc., Shawn Evans, seeks indemnification for certain expenses arising from a lawsuit Avande brought against him in which he partially prevailed. Evans has moved for summary judgment, arguing that his indemnification rights are mandatory by statute and under Avande's charter and bylaws. Avande asserts that it has no obligation to indemnify Evans and that, even if he has some legal entitlement to indemnification, further factual inquiry is necessary.

The nature of the claims brought against Evans in the underlying proceeding—and the limits of his success—create several complications despite the mandatory nature of Evans's indemnification right. Evans is in the unusual situation of seeking indemnification after having been found liable for breaching his duty of loyalty. He prevailed on four other claims after Avande failed to brief them. Evans now asserts a novel theory of proportional indemnification, claiming that he should be indemnified for his "partial success" on the fiduciary duty claim since the damages awarded to Avande were significantly less than it originally sought. As to the claims on which Evans was not found liable, the parties debate whether the claims were brought by reason of Evans's former officer status or concern unrelated post-termination conduct.

In this decision, I find that Evans is entitled to mandatory indemnification from Avande for losses he incurred in connection with certain claims in the plenary

action. Of the four claims on which he was not found liable, two are intertwined with his position as a former officer and two lack an obvious causal connection to Evans's covered status. I am unable to conclude that he has a right to indemnification for the unconnected claims as a matter of law. I likewise decline to find that Evans has a legal right to indemnification for the breach of fiduciary duty claim in proportion to the damages Avande ultimately recovered. Evans's motion for summary judgment is therefore granted, in part, in favor of his entitlement to mandatory indemnification for two claims and denied as to the rest.

## I.     FACTUAL BACKGROUND

I draw the following undisputed facts from the well-pleaded allegations in Evans's Verified Amended Complaint for Indemnification (the "Complaint") and the documents incorporated into the Complaint.[1]

### A.     Evans's Role at Avande

Defendant Avande, Inc., a privately held Delaware corporation with its principal place of business in South Carolina, provides medical management services to insurance companies, hospitals, and medical groups.[2] Plaintiff Shawn Evans served as Avande's Chief Executive Officer from February 2016 until he was

---

[1] *See* Verified Amended Complaint for Indemnification ("Am. Compl.") (Dkt. 29); Ct. Ch. R. 10(c). The Complaint incorporates by reference the Amended Complaint and post-trial memorandum opinion, among other filings, in the plenary action captioned *Avande, Inc. v. Evans et al.*, C.A. No. 2018-0203-AGB (hereinafter "Del. Action").

[2] Del. Action, Dkt. 12 ¶ 1.

2

terminated on February 15, 2018.[3] He also served as a member of Avande's board of directors during that time.[4]

## B. The Delaware Proceeding

Evans's departure from Avande was a contentious one. On March 22, 2018, just over a month after Evans was terminated as CEO, Avande filed litigation against him in this court (the "Delaware Action").[5] The crux of Avande's suit was that Evans had breached his duty of loyalty by engaging in self-interested transactions, authorizing improper expenditures, and failing to maintain proper documentation.[6] In addition to a breach of fiduciary duty claim, Avande's March 30, 2018 Amended Complaint sought a declaratory judgment that "Evans was validly and effectively removed from his position as CEO of Avande" and asserted claims against Evans for tortious interference, defamation, and conversion.[7]

After trial in the Delaware Action, then-Chancellor Bouchard issued an August 13, 2019 Memorandum Opinion holding that Evans breached his fiduciary duty of loyalty to Avande.[8] The court concluded that—excluding a few challenged

---

[3] Am. Compl. ¶ 8; *see Avande, Inc. v. Evans*, 2019 WL 3800168, at *1, *4 (Del. Ch. Aug. 13, 2019).

[4] Am. Compl. ¶ 8.

[5] *Id.* ¶ 15; Del. Action, Dkt. 12.

[6] *Avande*, 2019 WL 3800168, at *1.

[7] Am. Compl. ¶ 15; Del. Action, Dkt. 12 ¶¶ 18-38.

[8] *Avande*, 2019 WL 3800168, at *14-18.

3

transactions—Evans had engaged in self-dealing and acted in bad faith but that Evans did not commit corporate waste.[9] The court also found that Avande had failed to brief and therefore waived its claims for declaratory relief, tortious interference, defamation, and conversion.[10]

Evans was found liable to Avande for $21,817.70 at trial and an accounting was ordered to determine the extent of Evans's liability for certain payments Avande had made to DC Risk Solutions, Inc., an insurance brokerage and consulting firm Evans owned.[11] Judgment was entered for Evans on all other claims.[12] Evans was subsequently determined to be liable for an additional $43,687.77 plus pre- and post-judgment interest for payments made to DC Risk Solutions.[13]

## C. Evans Pursues Advancement and Indemnification

On June 12, 2018—after the Delaware Action was commenced—Evans sent a letter to Avande demanding advancement of expenses he had paid or incurred in connection with the Delaware Action.[14] On June 20, 2018, Evans sent a separate letter detailing his expenses from the Delaware Action.[15] The parties disagreed

---

[9] *Id.*

[10] *Id.* at *6.

[11] *Id.* at *1, *19.

[12] *Id.* at *19.

[13] Am. Compl. ¶ 31; Del. Action, Dkt. 215 ¶ 18.

[14] Compl. Ex. E (Dkt. 1).

[15] Compl. Ex. G.

about whether Evans was entitled to advancement and indemnification under 8 *Del. C.* § 145, Avande's bylaws, and Avande's charter.[16]  Ultimately, no funds were advanced to Evans and Avande disputed his right to indemnification.

On June 25, 2018, Evans commenced this action by filing a Verified Complaint for Advancement.  In September 2018, the parties agreed to stay the advancement proceeding pending the final disposition of the Delaware Action.[17] After Avande voluntarily dismissed its appeal of the Delaware Action on November 5, 2020,[18] the stay was lifted on November 12, 2020,[19] and Evans filed the Verified Amended Complaint for Indemnification on November 17, 2020—the operative Complaint in this action.[20]

### D.    The Dispositive Motions

On December 31, 2020, Avande filed a motion for judgment on the pleadings, contending that Evans's claim for indemnification was not ripe because he had failed to comply with a notice requirement in Avande's bylaws.[21]  On January 5, 2021, Evans filed a combined brief in opposition to Avande's motion and in support of a

---

[16] *See* Am. Compl. ¶¶ 1, 3-5.

[17] Dkt. 27.

[18] Dkt. 28.

[19] *Id.*

[20] Dkt. 29.

[21] *See* Dkt. 31; Dkt. 32 at 11-13.

5

motion for partial summary judgment.[22]  I heard argument on the motions on June 25, 2021.  In an oral ruling, I denied Avande's motion for judgment on the pleadings because, among other reasons, Evans's right to indemnification from Avande's bylaws was not exclusive of his right to indemnification under Section 145.[23]  This is my decision on Evans's motion for partial summary judgment.

## II.   LEGAL ANALYSIS

Evans's motion for summary judgment is governed by Court of Chancery Rule 56.  Under Rule 56, summary judgment may be granted when the record shows that "there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law."[24]

Evans seeks mandatory indemnification of the fees, expenses, and costs he incurred in the Delaware Action and the initial phase of this proceeding.[25]  Evans also seeks an award of fees on fees plus applicable interest.[26]  As discussed below, I find that Evans succeeded—for purposes of his entitlement to mandatory indemnification—in the Delaware Action as to Avande's declaratory judgment,

---

[22] Dkt. 33; Dkt. 34.

[23] Oral Arg. Tr. 75-86 (Dkt. 51).

[24] Ct. Ch. R. 56(c); *see United Rentals, Inc. v. RAM Hldgs., Inc.*, 937 A.2d 810, 829-30 (Del. Ch. 2007).

[25] Am. Compl. ¶ 35.  Evans confirmed that he will not seek indemnification for the counterclaims he filed in the Delaware Action.  *See* Pl.'s Opening Br. 1.

[26] Am. Compl. ¶¶ 48-52.

tortious interference, defamation, and conversion claims. I cannot, however, find as a matter of law that Evans succeeded on the fiduciary duty claim or that he has a legal right to indemnification for that claim. I also find that the declaratory judgment and conversion claims on which Evans prevailed were brought against him by reason of the fact that he was an officer or director of Avande. But genuine issues of material fact remain regarding the nature of Avande's tortious interference and defamation claims. As a result, Evans's motion for summary judgement is granted only with respect to the declaratory judgement and conversion claims.

## A. Mandatory Indemnification

Section 145 of the Delaware General Corporation Law grants corporations the discretion to indemnify officers or directors where a minimum standard of conduct is met.[27] Generally speaking, the permissive language of Sections 145(a) and 145(b) provides that indemnification may be available to an officer or director if she is found to have acted in good faith.[28] Section 145(c), by contrast, contains mandatory language providing for an entitlement to indemnification.[29] Whether an individual acted in good faith or what she perceived to be in the corporation's best interests is irrelevant in the context of that provision.

---

[27] 8 *Del. C.* § 145.

[28] *Id.* § 145(a)-(b).

[29] *Id.* § 145(c).

The broad, mandatory language of Section 145(c) comes into play when a covered person prevails in a proceeding covered by Section 145(a) or 145(b).  In other words, indemnification is compulsory where "a present or former director or officer of a corporation has been successful on the merits or otherwise in defense of any action, suit or proceeding"[30] and where that person was made a party to such action "by reason of the fact that the person is or was a director [or] officer . . . of the corporation."[31]

> Section 5.3 of Avande's bylaws closely tracks the language of Section 145(c):
>
> To the extent that a present or former director or officer of the Company has been successful on the merits or otherwise in defense of any action, suit or proceeding described in Section 5.1 or Section 5.2, or in defense of any claim, issue or matter therein, such person shall be indemnified against expenses (including attorneys' fees) actually and reasonably incurred by such person in connection therewith.[32]

Both Avande's bylaws and Article IX of its certificate of incorporation provide for indemnification to the "fullest extent permitted" by Delaware law.[33]

---

[30] *Id.* § 145(c).

[31] *Id.* § 145(a)-(b).

[32] Am. Compl. Ex. B (Bylaws) § 5.3.

[33] Am. Compl. Ex. A (Charter) at Article IX; Am. Compl. Ex. B (Bylaws) § 5.2.

### 1. Whether Evans Saw Partial Success in the Delaware Action

The right to indemnity under Section 145(c) vests upon the successful conclusion of a covered action.[34] Although Avande does not meaningfully contest that Evans technically prevailed on certain claims in the Delaware Action, the parties disagree about how his partial success should be measured. Avande initially contended in its motion for judgment on the pleadings that Avande's board of directors had the right under Avande's bylaws to adjudge Evans's success as a condition to indemnification. I rejected that argument in my ruling on Avande's motion.[35] Avande also suggests that whether Evans was "successful on the merits or otherwise" will "require examining evidence that is not in the record."[36]

No such examination is necessary for the claims on which Evans was not found liable. If a covered person is successful "on the merits or otherwise" in a proceeding covered by Section 145(a) or 145(b), the right to indemnification is absolute.[37] Section 145(c) provides for mandatory indemnification to allow

---

[34] *See* 1 Robert S. Saunders et al., *Folk on the Delaware General Corporation Law* § 145.04, at 4-472 (7th ed. 2021); *see also Sun-Times Media Grp., Inc. v. Black*, 954 A.2d 380, 397 (Del. Ch. 2008) (explaining that one's "entitlement to indemnification . . . only becomes ripe once the underlying proceeding is truly final").

[35] Oral Arg. Tr. 75-86.

[36] Def.'s Reply Br. 3 (Dkt. 37).

[37] 8 *Del. C.* § 145(c); *see Perconti v. Thornton Oil Corp.*, 2000 WL 982419, at *3 (Del. Ch. May 3, 2002) ("Under 8 *Del. C.* § 145(c), an officer or director who meets the requirements of the statutory provision has an absolute right to indemnification."); *see Witco Corp. v. Beekhuis*, 38 F.3d 682, 691 (3d Cir. 1994) ("Section 145(c) is a mandatory provision that applies to all Delaware corporations and grants an absolute right of

"corporate officials to defend themselves in legal proceedings 'secure in the knowledge that, if vindicated, the corporation will bear the expense of the litigation.'"[38]  A post hoc, fact-driven analysis of a director or officer's "success"—by the court or (as Avande initially advocated for) a board of directors—would undercut that rationale.  A corporate official need not have been "adjudged innocent in some ethical or moral sense."[39]  She need only prevail—in a strictly legal sense—in terms of the outcome of a proceeding.[40]

Evans was vindicated on all of the claims brought against him in the Delaware Action except one.[41]  The court entered judgment in Evans's favor on those claims because Avande had omitted arguments on certain claims in its post-trial briefing.[42]

---

indemnification in such situations." (citing *Green v. Westcap Corp. of Del.*, 492 A.2d 260, 265 (Del. Super. 1985))).

[38] *Homestore, Inc. v. Tafeen*, 888 A.2d 204, 211 (Del. 2005) (quoting *VonFeldt v. Stifel Fin. Corp.*, 714 A.2d 79, 84 (Del. 1998)); *see In re Walt Disney Co. Deriv. Litig.*, 906 A.2d 27, 65-66 (Del. 2006).

[39] *Zaman v. Amedeo Hldgs., Inc.*, 2008 WL 2168397, at *22 (Del. Ch. May 23, 2008) (discussing the "success on the 'merits or otherwise' standard" of Section 145(c)); *see Stockman v. Heartland Indus. P'rs, L.P.*, 2009 WL 2096213, at *10 n.44 (Del. Ch. July 14, 2009) ("'[S]uccess' under § 145(c) [] does not mean moral exoneration. Escape from an adverse judgment or other detriment, for whatever reason, is determinative." (quoting *Waltuch v. Conticommodity Servs., Inc.*, 88 F.3d 87, 96 (2d Cir.1996))).

[40] *See Hermelin v. K-V Pharm. Co.*, 54 A.2d 1093, 1107 (Del. Ch. 2012) (explaining that, "[w]hen determining success on the merits," the Court of Chancery "does not look 'behind the result'" as to whether "the *outcome* of a proceeding signals that the indemnitee has avoided an adverse result" (quoting *Merritt–Chapman & Scott Corp. v. Wolfson*, 321 A.2d 138, 141 (Del. Super. 1974))).

[41] *Avande*, 2019 WL 3800168, at *6.

[42] *Id.*

Evans won on a technicality, but—though not on the merits—he succeeded "otherwise."[43] A "further inquiry into the 'how' and 'why' of the result is unnecessary" as to the declaratory judgment, tortious interference, defamation, and conversion claims.[44]

The breach of fiduciary duty claim for which Evans was found liable is a different matter. Evans argues that he is entitled to proportional indemnification for that claim because he was ultimately found liable for a small percentage of the damages Avande sought.[45] Specifically, he believes that because Avande was awarded 1.2% of the damages it sought (or roughly $65.5 thousand of $5.4 million) he should be deemed indemnified for 98.8% of his defense costs.[46]

This concept of "proportional" indemnification finds no support in Delaware law. Evans is correct that a claimant may seek indemnification in cases of partial success. Section 145(c) provides for indemnification "[t]o the extent" that a covered person is successful in a proceeding.[47] But, as Avande correctly points out, Delaware courts have generally made that determination on a claim by claim basis. In *Merritt-Chapman*, the Delaware Superior Court explained—in the context of a

---

[43] 8 *Del. C.* §145(c).

[44] *Hermelin*, 54 A.2d at 1107.

[45] Pl.'s Opening Br. 22-23 (Dkt. 34).

[46] *Id.* at 22-26; Pl.'s Reply Br. 5-6 (Dkt. 41).

[47] 8 *Del. C.* § 145(c).

criminal action—that Section 145(c) entitles claimants to "partial indemnification if successful on a count of an indictment, which is an independent criminal charge, even if unsuccessful on another, related count."[48] The same logic has been consistently applied in the civil context.[49]

Evans cites the Delaware Superior Court's decision in *Dreisbach* to argue that an assessment of one's entitlement to fees may be based on the percentage of damages awarded for partial success.[50] That case does not, however, support Evans's right to indemnification. In *Dreisbach*, the court addressed a prevailing party's motion for costs and fee-shifting and considered whether the results entitled the plaintiffs to a full award of attorneys' fees.[51] The court reduced the amount of fees sought because, among other reasons, the plaintiffs only prevailed on one legal theory out of four and recovered less than 7% of the total damages sought.[52] The court did not base its decision solely on the percentage of damages recovered or

---

[48] 321 A.2d at 141.

[49] *See Brown v. Rite Aid Corp.*, 2019 WL 2244738, at *8 (Del. Ch. May 24, 2019) ("Whether a party seeking indemnification was successful is determined claim by claim."); *Paolino v. Mace Sec. Intern., Inc.*, 2009 WL 4652894, at *8 (Del. Ch. Dec. 8, 2009) (describing "Delaware's overarching approach to Section 145, in which claims are evaluated individually or in appropriate groupings"); *Zaman v. Amedeo Hldgs., Inc.*, 2008 WL 2168397, at *25-33 (Del. Ch. May 23, 2008) (conducting claim by claim analysis).

[50] *Dreisbach v. Walton*, 2014 WL 5426868, at *7 (Del. Super. Oct. 27, 2014); Pl.'s Opening Br. 23; Pl.'s Reply Br. 8.

[51] *Dreisbach*, 2014 WL 5426868, at *7.

[52] *Id.*

reduce the amount of fees sought by 93%.[53] Nor did the court equate "success" with damages.[54] Moreover, the rule applied in that decision pertained to the recovery of costs and attorneys' fees under 10 *Del. C.* § 5101 and the amount awarded was a matter of the court's discretion.[55] The statute and standards at issue here regarding mandatory indemnification are entirely separate.

Evans faults Avande for "fail[ing] to provide any legal authorities regarding how the Court should address partial success in indemnification cases when a prevailing party is successful in defending against a certain percentage of the damages sought."[56] But it is unsurprising that Avande did not cite any precedent. The court is aware of no authority where "partial success" was analyzed based on the percentage of damages a prevailing party recovered against an indemnitee. Evans himself acknowledged that *Dreisbach* is "the only Delaware case [he] was able to find concerning the award of costs and attorney's fees based on an evaluation of the percentage of damages awarded for a party's partial success."[57]

Apart from being unprecedented, to define a party's "success" for indemnification purposes based the proportion of damages recovered on a single

---

[53] *Id.* at *3, *7.

[54] *Id.* at *7.

[55] *Id.* at *4.

[56] Pl.'s Reply Br. 8.

[57] *Id.*

claim would be unworkable.[58]  It would also be untethered from the policy at the root of Section 145(c), as Evans's situation perfectly encapsulates.  The overarching purpose of Section 145 is to encourage capable persons "to serve as corporate directors, secure in the knowledge that expenses incurred by them in upholding their honesty and integrity as directors will be borne by the corporation they serve."[59]  A director adjudged to have acted in bad faith in breach of his duty of loyalty can hardly assert that he is entitled to indemnification for a claim where that integrity was found lacking.

Of course, Avande did not prevail on all aspects of the duty of loyalty claim against Evans.  For example, Avande failed to prove that certain challenged transactions constituted waste and, as to two transactions, Evans was found not to

---

[58] If the percentage of damages avoided was the driving factor in a partial indemnification analysis, it would be impossible to segment time spent on the portion of a "losing" claim that led to a limited damages award.  Parties routinely "win" or "lose" where monetary damages are irrelevant or difficult to quantify.  In the Delaware Action, for example, Chancellor Bouchard noted that it was "difficult to determine precisely the level of harm to which the Company ha[d] been exposed as a result of Evans's breach of duty." *Avande*, 2019 WL 3800168, at *15.  Moreover, if a party was found liable on a claim, but the court declined to award the full measure of damages sought, the court would risk disadvantaging a winning party in a subsequent indemnification case. *Cf. May v. Bigmar, Inc.*, 838 A.2d 285, 291 (Del. Ch. 2003) (discussing the "problem of identifying 'winning' issues from 'losing' ones" where an overly granular approach is taken to partial indemnification, such as making it necessary for a court to explicitly address all issues presented or risk disadvantaging the party that won in a plenary action in a subsequent indemnification claim).

[59] *Stifel Fin. Corp. v. Cochran*, 809 A.2d 555, 561 (Del. 2002) (citation omitted).

have breached his fiduciary duties.[60]  But on the "claim, issue or matter" of whether Evans breached his duty of loyalty, he did not prevail.[61]  I therefore cannot find that he is entitled, as a matter of law, to indemnification for a portion of the expenses he incurred in defending against that claim.

### 2.  Whether the Delaware Action Was Brought by Reason of Evans's Covered Status

The other contested issue is whether the claims on which Evans prevailed were brought "by reason of the fact" that Evans was a director or officer of Avande. The Delaware Action focused in large part on actions Evans took while he was a director and officer.  But it also involved certain of Evans's actions after he was terminated from those positions.  Avande argues that its claims against Evans (other than the breach of fiduciary duty claim) in the Delaware Action involved only his

---

[60] *Avande*, 2019 WL 3800168, at *14, *16.

[61] 8 *Del. C.* § 145(c) provides that partial indemnification may be available if a former director or officer was successful "in defense of any claim, issue or matter therein." Professor Folk's seminal report on the 1967 amendments to the Delaware General Corporation Law discusses this language as intended to solve the need, raised by then-Chancellor Seitz, to clarify "whether the statute permits an allocation of expenses when directors have been adjudged liable as to some but no all of the claims asserted against them."  Ernest Folk, *Folk Report* 88, https://delawarelaw.widener.edu-/files/resources/folkreport.pdf (quoting Essential Enters. Corp. v. Dorsey Corp., 182 A.2d 647, 655 (Del. Ch. 1962)).  Professor Folk explained that while this language may be helpful, it should be emphasized that the Court of Chancery is empowered to "allocate indemnifiable expenses and items when a director is adjudged liable as to some but not all claims to the extent that the court deems fair and equitable." *Id.* at 88-89.  The Folk Report speaks in terms of partial indemnification for "claims," as the precedent of this court interpreting Section 145(c) has done since, with the goal being to ensure indemnity that is "fair and equitable" under the circumstances. *Id.* at 87; *see supra* note 50 (citing cases).

15

post-termination actions, rather than actions taken in his corporate capacity.[62] Evans, in response, contends that even if certain challenged actions occurred when he was no longer a fiduciary, they were rooted in information and knowledge he gained pre-separation.[63]

The "by reason of the fact" requirement in Section 5.2 of Avande's bylaws tracks the language of Section 145 of the DGCL,[64] which Delaware courts "interpret[] broadly in favor of indemnification and advancement."[65] It requires only "a nexus or causal connection between [a claim] and one's official corporate capacity."[66] A causal connection exists "if the corporate powers were used or necessary for the commission of the alleged misconduct."[67] That link, however, must also derive from conduct that occurred while one was a director or an officer.[68] After reviewing the pleadings in the Delaware Action,[69] I conclude that the

---

[62] Def.'s Reply Br. 17-20.

[63] Pl.'s Reply Br. 9-13.

[64] Am. Compl. Ex. B (Bylaws) § 5.2.

[65] *Pontone v. Milso Indus. Corp.*, 100 A.3d 1023, 1050 (Del. Ch. 2014) (quoting *Underbrink v. Warrior Energy Servs. Corp.*, 2008 WL 2262316, at *7 (Del.Ch. May 30, 2008)).

[66] *Homestore*, 888 A.2d at 214.

[67] *Bernstein v. TractManager, Inc.*, 953 A.2d 1003, 1011 (Del. Ch. 2007).

[68] *Id.*

[69] *Holley v. Nipro Diagnostics, Inc.*, 2014 WL 7336411, at *8 (Del. Ch. Dec. 23, 2014) ("[C]ourts often can determine whether the 'by reason of the fact' requirement has been satisfied solely by examining the pleadings in the underlying litigation.").

declaratory judgment and conversion claims have a causal connection to Evans's former officer role, but I cannot conclude as a matter of law that the tortious interference and defamation claims have such a connection.

Avande's declaratory judgment claim sought a declaration that Evans was "validly and effectively removed from his position as CEO."[70] It is difficult to see how that claim was not brought "by reason of the fact" that Evans was an officer of Avande. The very nature of the claim makes it apparent. If Evans had prevailed on the merits of that claim, it would have been because his removal as CEO was invalid.

Both the declaratory judgment and conversion claims also concern Evans's alleged post-termination misuse of company information that he was given access to while Avande's CEO. This court has found that "allegations relating to post-separation use of confidential information learned pre-separation are 'by reason of the fact' of [the plaintiff's director or officer position]."[71] That is precisely the case here. The declaratory judgment claim asked that Evans be directed to "return and

---

[70] Del. Action, Dkt. 12 ¶ 20.

[71] *Ephrat v. MedCPU, Inc.*, 2019 WL 2613281, at *7 (Del. Ch. June 26, 2019); *see Carr v. Glob. Payments Inc.*, 2019 WL 6726214, at *6 (Del. Ch. Dec. 11, 2019) ("If the claim as pled relies on the misuse of confidential information learned while an officer or director, it 'pertains to' the party's former position, and that party is entitled to advancement under the standard applicable here."); *Brown v. LiveOps, Inc.*, 903 A.2d 324, 326 (Del. Ch. 2006) (finding the causal connection requirement satisfied where a former officer allegedly misappropriated corporate trade secrets obtained while serving as an officer); *Pontone*, 100 A.3d at 1052.

convey to Avande" information he and his agents obtained during his tenure.[72] Regarding the conversion claim, Avande alleged that Evans had access to the company's confidential financial, accounting, and other business records "[d]uring the time Evans served as CEO" and that he continued to access the confidential company records post-separation without authorization.[73] These are covered actions. Evans was given access to the confidential company information at issue in these claims in connection with his authority as Avande's CEO. He is therefore legally entitled to indemnification for the expenses he incurred in successfully defending against them.

I reach a different conclusion regarding the tortious interference and defamation claims. As Avande persuasively argues, those tort claims (in contrast to the conversion claim) "arose from the *falsity* of Evans's communications, not the fact that Evans contacted those parties using knowledge he gained while an officer of Avande."[74] After conducting the careful review of the individuals claims as required at the indemnification phase of a proceeding,[75] I am inclined to agree.

---

[72] Del. Action, Dkt. 12 ¶¶ 20-21.

[73] *Id.* ¶¶ 34-36.

[74] Def.'s Reply Br. 21.

[75] Had this been an advancement proceeding, I would likely have viewed the four claims at issue holistically and found that the "by reason of the fact" requirement was satisfied. Analyzing claims with a broad brush is not, however, the proper course in an indemnification proceeding. *See Thompson v. Orix USA Corp.*, 2016 WL 3226933, at *6 (Del. Ch. June 3, 2016) (explaining that a line drawing exercise regarding what "conduct

18

Avande's tortious interference and defamation claims alleged that Evans attempted to sabotage Avande's business relationships with third parties.[76]  It is not apparent to me that those claims implicate the misuse of confidential company information or property.  According to the complaint in the Delaware Action, after his termination, Evans engaged in "various acts with the intent and effect of canceling or prejudicing the Company's relationships and/or accounts with third parties such as vendors, service providers and lenders."[77]  Avande alleged that Evans "communicated with vendors and creditors of Avande and falsely stated that the Company is unable to pay its debts as they became due and payable."[78]  Avande further alleged that he solicited those vendors and creditors "to take legal action against the Company for the purpose of increasing the Company's expenses and driving it into bankruptcy."[79]  In doing so, Avande claimed, Evans sought to "damag[e] the Company's relationships with th[o]se third parties and with the knowledge that the Company's solvency and ability to pay debts would be critical to them."[80]

---

at issue occurred after plaintiffs left" a company would be more appropriate at the indemnification stage rather than the advancement stage).

[76] Del. Action, Dkt. 12 ¶¶ 27-32.

[77] *Id.* ¶ 27.

[78] *Id.* ¶ 31.

[79] *Id.*

[80] *Id.*

I cannot conclude as a matter of law that a causal link is present between Evans's status as an officer and the post-termination conduct at the center of the tortious interference and defamation claims. I find the logic followed by this court in *Charney* in denying indemnification for post-termination conduct to be apt.[81] In that case, a former officer asserted that "but for" his prior status, the challenged acts including "inference with the Company's operations, efforts to regain control of [the company] . . . and his disparaging statements—would not have been possible."[82] Then-Chancellor Bouchard disagreed, finding that the "actions [the officer] actually took, divorced from the spin he now seeks to put on them," did not supply the requisite causal nexus.[83] He explained that a former CEO's "social status and reputation he obtained as the 'face' of the Company he founded and led for many years" was not a "corporate power."[84] He also distinguished *Pontone*, where a former officer and director was granted advancement for contract and tort claims where the "gravamen" of the allegations concerned a "scheme" facilitated by "confidential property and trade secret information" acquired during his tenure.[85]

---

[81] *Charney v. Am. Apparel, Inc.*, 2015 WL 5313769, at *16-18 (Del. Ch. Sept. 11, 2015).

[82] *Id.* at *17 (citing the plaintiff's brief).

[83] *Id.*

[84] *Id.*

[85] *Id.* (quoting *Pontone*, 100 A.3d at 1051).

20

Unlike the conversion claim, neither the tortious interference nor defamation claim obviously concern confidential information. It is therefore not apparent to me that Evans's former status was necessary for the challenged misconduct. Evans could have attempted to defame Avande and interfere with various third-party relationships had he not been the CEO of Avande. Given these genuine issues of material fact, Evans is not entitled to a judgment as a matter of law that the tortious interference or defamation claim is covered.[86]

## B.  Fees on Fees

Evans also seeks a finding that he is entitled to fees and costs that he incurred in pursuing this action. Section 5.7 of Avande's bylaws requires the company to "indemnify [Evans] against all expenses actually and reasonably incurred by [Evans] in connection with any action for indemnification or advancement of expenses from

---

[86] Avande did not file a cross motion for summary judgment and its motion for judgment on the pleadings concerned only the ripeness of Evans's claims—a notion that I rejected. The final question of whether Evans is entitled to any indemnification for the tortious interference, defamation, and breach of fiduciary duty claims will need to be decided at a later stage. Avande will carry the burden of demonstrating that Evans is not entitled to mandatory indemnification. *See VonFeldt*, 1999 WL 413393, at *3 ("By using the phrase 'shall indemnify,' the bylaw not only mandates indemnification; it also effectively places the burden on [the company] to demonstrate that the indemnification mandated is not required."). In other words, Avande will need to demonstrate that the tortious interference and defamation claims were not brought "by reason of the fact" that Evans was an officer or director of Avande. It will also need to again address whether Evans succeeded in part on the fiduciary duty claim. But even if Avande could not meet that burden and Evans prevailed, it bears noting that adjudication will undoubtedly require an onerous inquiry into the underlying action for what would likely be of limited value to Evans.

the Company . . . to the extent such person is successful in such action."[87]  "At common law, 'a person who successfully prosecutes a claim under 8 *Del. C.* § 145 is typically entitled to recover the reasonable expenses incurred in connection therewith unless the corporation precludes such recovery upfront in the governing document or contract providing for indemnification.'"[88]

Avande concedes that if it "is obligated to indemnify [Evans], Delaware law and the Company's Bylaws would entitle him to reimbursement of reasonable attorneys' fees and costs relating to this action."[89]  But Avande argues that "any consideration of 'fees on fees' must await and correspond to a substantive determination of whether and to what extent Evans is entitled to indemnification," because "any award of fees and expenses for bringing a claim for indemnification must be proportionate to the level of success achieved."[90]  As to the declaratory judgment and conversion claim, no further determination is needed.  Evans succeeded in part on the merits of those covered claims and is entitled as a matter of law to an award of fees and expenses proportionate to his success.[91]

---

[87] Am. Compl. Ex. B (Bylaws) § 5.7.

[88] *Charney*, 2015 WL 5313769, at *18 (quoting *Blankenship v. Alpha Appalachia Hldgs., Inc.*, 2015 WL 3408255, at *3 (Del. Ch. May 28, 2015)).

[89] Def.'s Reply Br. 26.

[90] Def.'s Reply Br. 26-27.

[91] *See* 8 *Del. C.* § 145(c); *Cochran*, 809 A.2d at 561; *Fasciana v. Elec. Data Sys. Corp.*, 829 A.2d 178, 183 (Del. Ch. 2003)

Consistent with the bylaws, Evans will therefore be entitled to a proportionate recovery of his fees and expenses to the extent he ultimately prevails in this indemnification action.[92] The amount of those fees and expenses will be determined in a subsequent stage of the case.[93]

In arguing his entitlement to fees on fees, Evans also appears to assert that he is entitled to bad faith fee shifting for Avande's Motion for Judgment on the Pleadings.[94] I decline to grant that request. I cannot say as a matter of law that Avande's motion was brought in bad faith.

## III.   CONCLUSION

For the foregoing reasons, Evans' motion for summary judgment is granted in part. He is legally entitled to indemnification in connection with the declaratory judgment and conversion claims brought against him in the Delaware Action. He is also legally entitled to fees on fees for those claims. The motion is otherwise denied. I ask that counsel confer and submit a form of order to implement this decision.

---

[92] Am. Compl. Ex. B (Bylaws) § 5.7.

[93] *See* Dkt. 49 (outlining the liability and damages stages of this bifurcated proceeding); *see also Brown*, 2019 WL 2244738, at *8-9; *Meyers v. Quiz-DIA LLC*, 2017 WL 2438328, at *9 (Del. Ch. June 6, 2017) (not addressing the specific amount of indemnification to which the claimants were entitled).

[94] *See* Pl.'s Opening Br. 33-34; Pl.'s Reply Br. 34-35.